CAROLYN LINDLEY, Adm'r of the Estate of Gary Alan Lindley, Deceased, Plaintiff-Appellant, v. ST. MARY'S HOSPITAL, Defendant-Appellee.

Fifth District   No. 79-421

Opinion filed June 26, 1980.

Gomric & Kurowski, of Belleville (James J. Gomric and John J. Kurowski, of counsel), for appellant.

G. Keith Phoenix and Reed W. Sugg, both of Shepherd, Sandberg & Phoenix, of St. Louis, Missouri, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The plaintiff, Carolyn Lindley, appeals from a judgment entered in the circuit court of St. Clair County following a jury verdict denying recovery in her wrongful death action for medical malpractice involving emergency room treatment accorded to her deceased husband. Lindley challenges the propriety of the trial court's denial of her request to call an expert witness in her case-in-chief, as well as its disallowance of the same witness' testimony for purposes of rebutting testimony offered on behalf of the defendant. Also charged as error is the court's refusal to submit two instructions concerning the standard of care required as evidenced by hospital regulations. Our resolution of the first issue makes unnecessary any decision as to other issues in the case before us. We reverse and remand the case to the trial court for further proceedings.

The decedent, Gary Lindley, of Fairview Heights, Illinois, was the

victim of a shotgun blast inflicted during an attempted robbery. The crime occurred at an auto body repair shop owned by him in East St. Louis on the evening of July 2, 1976. He was taken by ambulance to the emergency room of St. Mary's Hospital, also in East St. Louis, immediately after the shooting. Upon arrival at 9:38 p.m., he was examined by the emergency room physician on duty, Dr. Emmanuel Aufwape.

The initial examination disclosed a large array of frontal pellet wounds covering his chest and abdomen. In addition to these, a lesser number of flesh wounds were found on the face, arm and shoulder, all of which resulted from the scattering diffusion of buckshot fired at the 29-year-old victim. Dr. Aufwape ordered that posterior and anterior films of the patient be made on portable X-ray equipment available in the emergency room. At the same time separate steps were taken to treat the superficial aspect of the perforations, to monitor and stabilize the patient's vital functions, such as heart rate and blood pressure, and a second series of X rays was allegedly requested of radiology personnel, following the results of the initial set. The second set of views was never obtained; the reasons indicated were Lindley's restlessness and inability to physically cooperate with the more elaborate radiological procedures required to obtain multiple films of the chest and abdominal regions. Additional steps were also taken in order to assure the patient's relative comfort and stability while under observation pending treatment by an attending physician.

Mrs. Lindley was contacted and an attending physician, Dr. Rene Julien, was recommended. He was in turn telephoned by the emergency room staff at approximately 11:25 p.m. It is the role of the attending physician to prescribe ongoing treatment once he is notified and accepts responsibility for care of the patient. No request was made that Dr. Julien come to the hospital to treat or observe the victim at this time; he was informed of Lindley's condition and the procedures taken to the moment by hospital staff. It appears that he did not speak directly with Dr. Aufwape at any time during the night. Dr. Julien ordered that Lindley be officially admitted to St. Mary's and around midnight he was placed in the intensive care unit (I.C.U.) where his condition was monitored throughout the night. The attending physician was informed by telephone several times during the night of the patient's outward signs and vital functions. At 6:20 a.m. on the morning of July 3, the hospital records listed Lindley's condition as shifting to "critical" while under continuing observation in the I.C.U. Dr. Julien arrived at St. Mary's at approximately 8:30 a.m. and after a brief examination of the patient ordered immediate preparation for exploratory surgery.

The operation which ensued began at 9:30 a.m. and lasted until

nearly 2 o'clock that afternoon. It revealed puncture wounds of the peritoneal cavity of a previously unknown depth with injuries to the spleen, pancreas, liver, and duodenum, among others. Various corrective measures were taken but it was found that during the previous night, bacterially contaminated fluids had infected areas within the abdomen, which eventually caused Lindley's demise. The patient was removed to Firmin Desloge Hospital in St. Louis several days later for specialized treatment of the infection but failed to recover, passing away on July 17, 1976.

Controversy at trial centered on whether or not measures other than mere stabilization of vital functions and observation were called for in proper treatment of the decedent's condition in light of the symptoms exhibited upon arrival and thereafter through the night. It was the position of the hospital that the array of distinct perforation wounds did not indicate the need for immediate surgery and that such would not have been the normal course of treatment under the circumstances; that the patient's vital signs presented no radical departure from their normal range, and thus, internal hemorrhaging was not indicated; that the X rays produced initially could not be read so as to disclose penetration of the peritoneal cavity which in actuality did occur, and that subsequent X rays were unobtainable and could not, in any event, have revealed with certainty the extent of the injuries inflicted; and that external examination of the abdomen showed no distention, nor other indication of internal damage, which would have called for treatment other than that given or diagnostic efforts other than those performed.

The plaintiff, however, offered testimony indicating that under the circumstances further diagnostic procedures were required in the exercise of due care. Among those suggested as feasible and proper were an earlier execution of the exploratory laparotomy which was eventually performed, and the injection of a needle into the peritoneum through which internal fluids could be withdrawn and analyzed. Of greater significance, regarding the issue presented by this appeal, plaintiff argued that the X rays taken could not rule out the possibility that shot may have penetrated to a greater depth, even though these X rays may not have positively confirmed such penetration when read by Dr. Aufwape alone. With the concommitant danger of infection as a known possibility, she asserted that further diagnostic steps should have been taken in the exercise of ordinary care and skill. Among these was consultation with the hospital's specialist in radiology for an expert reading of the films taken. This was not done. It was to further advance this theory that the plaintiff, on the fifth day of trial, sought to call an expert witness to the stand, Dr. John Crotty, a radiologist on the staff of St. Mary's Hospital. The defense objected vigorously and a lengthy conference was held in chambers. The

hospital alleged surprise and severe prejudice due to inability to properly prepare a responsive cross-examination and inability, on such short notice, to produce its own expert radiologist to counter the proposed testimony. After hearing arguments by both counsel concerning the discovery obtained to date and the considerations involved in allowing the testimony sought, the court ruled that the request would be denied. After the close of testimony by her last witness, the plaintiff renewed her request to call Dr. Crotty and submitted a written motion in support of her right to do so. The court again denied the motion. Plaintiff's post-trial motion also charged error in the court's disallowance of Dr. Crotty's testimony.

At issue in the appellant's request for review is the propriety of sanctions imposed by the trial court which denied her the opportunity to offer expert testimony. A plaintiff's fundamental right to marshal and present for hearing both real and testimonial evidence in support of his cause is so basic to our system of jurisprudence that we need cite no authority for the proposition. Regarding the right to marshal evidence, the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 58(1)) authorizes that the process of trial discovery in civil matters is to be governed according to rules adopted by the Illinois Supreme Court. The methods and procedure of discovery are listed in Supreme Court Rules 201 through 219, and in Rule 201(b)(1) it is stated that "[e]xcept as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, * * *."

■■ In conjunction with the discovery process Supreme Court Rule 218 provides that, at the discretion of the court, a pretrial conference may be held the general purpose of which is to focus and coordinate the conduct of the impending trial so that an orderly and efficient disposition of the action may be had. (See, *e.g.*, *Conover v. Smith* (1974), 20 Ill. App. 3d 258, 260, 314 N.E.2d 638.) Among the topics which may be addressed in such a conference is "the limitation of the number of expert witnesses" (Supreme Court Rule 218(a)(4) (73 Ill. 2d R. 218(a)(4)); pursuant to such consideration, Rule 218(b) provides that "[t]he court shall make an order which recites any action taken by the court and the agreements made by the parties as to any of the matters considered, * * *." In the present cause, after careful review of the record, we can find no affirmative limitation on the number or identity of any witnesses, let alone those expected to deliver expert testimony in regard to the alleged medical malpractice. Neither is there present any order issued by the court in accord with its authority under Rule 218(b) which bears on this question. Contrary to appellee's assertions that the trial court "made a request in the form of a pre-trial order" delimiting witnesses who might be called, we

find only that at one instance the plaintiff below, in reply to an inquiry by the court as to whether there were any other motions to be made at the conference, stated:

"None, your Honor. Might I just offer to the court at this point a list of prospective witnesses to help in the questioning of the jury or if reference is made [*sic*]."

The list was accepted virtually without comment and it is on this slim basis that such an order is asserted to have issued. We observe that during the conference in question the court repeatedly inquired as to further motions which either party might have wished to advance for consideration. No motion of the sort in question was presented and the court's final instructions as to general conduct during the trial did not include such an order.

The Civil Practice Act provides that a party cannot be required to furnish its opposition with a list of the names and addresses of all of the witnesses intended to be presented at trial. But the rule is qualified where an opposing party, by motion on its own part, specifically requests the names of experts. Following such a motion, those who are known and intended to be called must be disclosed. (Ill. Rev. Stat. 1977, ch. 110, par. 58(3).) This policy, far from intending to invade the province of trial strategy, is aimed at the prevention of surprise and the allowance of "fair and equitable preparation of the case by all parties." As appellant correctly points out, the production of such information is not automatic; it requires a motion requesting the same. While interrogatories and answers passed between the parties herein, on dates well before trial (these containing requests and responses concerning experts involved in the case), no such motion under section 58(3) is revealed by the record.

■■ Where there is an unjustified failure to comply with the rules of discovery, sanctions may be invoked against a recalcitrant party. Supreme Court Rule 219(c) (73 Ill. 2d R. 219(c)) states, *inter alia*:

"* * * If a party, * * * unreasonably refuses to comply with any provision of Rules 201 through 218, or fails to comply with * * *any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:
* * *

(iv) that a witness be barred from testifying concerning that issue."

We realize that where there is a question as to the appropriateness of entering a sanction such as that imposed in the present controversy, decision in the matter is within the sound discretion of the trial court. In reaching a decision the following factors should be taken into account:

Surprise, if any, to the opposing party; the good faith of the party seeking to call the witness involved in respect to notice given the opposition; equal opportunity and access in order that the opposing party may interview or depose the witness in question prior to trial; and prejudice which might result from the proposed testimony. *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 290, 216 N.E.2d 14.

■■ Because no order of court or rule of discovery was contravened according to the facts here presented, we find it was an abuse of discretion for the trial court to prevent Dr. Crotty from taking the stand in the capacity of an expert witness for the plaintiff. Even if we assume, solely for purposes of argument, that some fault did reside with the plaintiff in the conduct of discovery or pretrial procedures, we nevertheless fail to see how such a sanction was here appropriate. The hospital concedes on appeal that surprise was not the true source of its objection. Dr. Crotty was on the appellee's own staff and thus it had ready access to the witness at all times. In response to defendant's supplemental interrogatory dated January 8, 1979, concerning parties having knowledge of facts pertinent to the case, plaintiff answered by listing the names of specific witnesses and under answer (d) listed the following group of persons:

> "Any and all people named in the records and reports of St. Mary's Hospital provided by defendant to plaintiff in this case."

Dr. Crotty was included in this group. In addition to this the defense stated in court that it had contacted Dr. Crotty's office directly some two weeks before trial and had long been aware of Dr. Crotty's involvement in the case. We can discern no lack of good faith on the part of the appellant in seeking expert radiological testimony where crucial issues in the case were raised by the evidence and argument presented; the hospital itself contested the viability of diagnostic procedures involving X rays under the circumstances. And finally, we can see no genuine prejudice to the defense where an issue, once raised, is sought to be clarified, particularly in light of measures which might easily have been taken to prevent any real discommodity in the defense's trial strategy or opportunity to present further proof. It can hardly be said that the defense should not have expected radiological evidence of this kind to be significant due to the relatively limited number of diagnostic tools germane to the case. Defense counsel delivered to the court at the opening of trial, by his own hand, X rays explicitly requested for use as exhibits under a motion filed by Lindley five days before trial began. In short, under these circumstances we cannot discern that the appellant's failure to specifically name a particular expert witness during the pretrial conference constitutes such deliberate, contumacious, or unwarranted

disregard of court authority as to justify a total bar to his testimony. *Cf. Schaefer v. Sippel* (1978), 58 Ill. App. 3d 816, 821, 374 N.E.2d 1092; *Hansen v. Skul* (1977), 54 Ill. App. 3d 1, 4, 369 N.E.2d 267.

Illinois courts have held that a party's discovery regarding witnesses should not and cannot properly be closed even after trial has begun nor can the trial court properly limit a party's witnesses to such as have been previously disclosed. (*Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 257, 378 N.E.2d 1176; accord, *Mendelson v. Feingold* (1979), 69 Ill. App. 3d 227, 234, 387 N.E.2d 363.) As *Plost* suggests, the better practice allows use of newly suggested witnesses where the opposing party is given an opportunity to depose them before they may testify, thus averting possible prejudice. We are reminded that the leading purpose of the sanctions provided for failure to comply with discovery rules is to promote the goal of discovery. Their punitive nature is secondary to this goal. *Buehler v. Whalen* (1976), 41 Ill. App. 3d 446, 458, 355 N.E.2d 99.

■■ The importance of expert testimony is well noted in cases of the kind now before this court. Plaintiffs in such cases must establish the standard of care against which the defendant physicians' or hospitals' conduct is to be measured. In most cases of this nature it is only the testimony of experts which can provide evidence of such a standard. (See *Plost*, 62 Ill. App. 3d 253, 258; *Schaefer*, 58 Ill. App. 3d 816, 819; *Burrow v. Widder* (1977), 52 Ill. App. 3d 1017, 1023, 368 N.E.2d 443.) Denial of significant testimony in the present case must be viewed against such considerations. We have already indicated that the issue of what could or could not be determined by means of radiological examination as to the depth of the decedent's injuries was called into question by the examination of other expert witnesses offered by the parties. Appellee argues that the pertinent evidence was thus obtained on this issue and therefore no prejudice resulted from the denial of Dr. Crotty's testimony. But it is patently clear that, of the qualified experts who were permitted to testify, none was a radiologist. Those who did were specialists in pathology, infectious disease, emergency medicine, and surgery. The record discloses, in an X-ray report by Dr. Crotty, that the doctor could have testified, based upon the emergency film taken initially, that penetration of the peritoneal cavity did occur. Such evidence was central to the plaintiff's efforts, and it cannot be doubted that such expert testimony might have significantly influenced the mind of the jury when coupled with other factors brought to its attention.

■■ Appellee has also argued that the plaintiff failed to make an offer of proof regarding the proposed testimony of Dr. Crotty and thus did not preserve her objection to its exclusion. Such an offer is necessary in situations where the trial judge, opposing counsel and reviewing courts

would otherwise have no other satisfactory indication of the substance of the proof to be made. But an offer is not necessary when the trial judge understands the character of the evidence and the nature of the objection to it. (*Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 253, 219 N.E.2d 588.) There is no question left by the record as to the nature and intent of Dr. Crotty's testimony and it is clear that, in the extended colloquies over its exclusion, the trial judge was fully apprised of its content. Therefore, we find the argument unpersuasive.

Accordingly, we find that the denial of Dr. Crotty's testimony constituted prejudicial error requiring reversal. The cause will be remanded to the trial court for a new trial consistent with the views expressed herein.

Reversed and remanded.

SPOMER and KASSERMAN, JJ., concur.