WILBERT HENGELS, Plaintiff-Appellant, v. ANTHONY GILSKI *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—3052

Opinion filed September 27, 1984.

Trinley and Lamb, of Chicago, for appellant.

John B. Grogan, Ltd., of Chicago (Susan Gunty, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

Following an automobile accident, the plaintiff, Wilbert Hengels, filed this personal injury action against the defendants, Anthony Gilski, and Gilski's employer, the Harold M. Pitman Company. Summary judgment was granted in favor of the employer. A jury returned a verdict in favor of the defendant Gilski. The plaintiff now appeals and raises several allegations of trial error for this court's review.

The plaintiff initially maintains that the trial judge abused his discretion in refusing to grant a change of venue to the plaintiff. The record discloses that during a pretrial discovery deposition of one of the plaintiff's witnesses, defense counsel called the trial judge's home to secure a ruling. Defense counsel asked, "Is this Pat?" or something to that effect, to the person who answered the telephone. After the call was completed, defense counsel stated for the record that he had met Pat Breen, the judge's wife, in the past and that she was the sister of a ward committeeman.

At the close of opening arguments and after the trial judge had ruled upon pretrial motions, plaintiff's counsel appeared dissatisfied with certain rulings made by the trial court. Plaintiff's counsel stated, "Judge, with all due respect, you are interrupting, you are being ar-

gumentative, you are forming conclusions; and I think perhaps we should take a change of venue." The court then responded, "First of all, you have already taken one[1]; and also, I have already ruled on substantive matters. Mr. Trinley, there is nothing wrong with my making comments while you are arguing, if it assists me to arrive at what I believe to be a correct conclusion." During this interchange, no mention was made by plaintiff's counsel of any alleged acquaintance between defense counsel and the trial judge or his wife. In fact, the transcript of the trial court proceedings discloses no reference to defense counsel's acquaintance with Mrs. Breen until the plaintiff filed a petition for a change of venue following entry of the jury's verdict.[2] This petition was apparently filed because the plaintiff did not believe he would receive a fair hearing at the post-trial stage and he wished to have a different judge hear his post-trial motions. On the same date the petition was filed, the plaintiff also propounded interrogatories to the trial judge, asking him to describe in detail any relationship he or his family had with defense counsel. The petition for a change of venue was denied and the trial judge never responded to the interrogatories.

Approximately three months following the jury's verdict, the plaintiff presented a second written petition for a change of venue. In this petition, the plaintiff requested the trial judge to recuse himself from the trial which had already occurred and which resulted in a jury verdict against the plaintiff. The petition was denied and the trial judge stated in his order concerning the plaintiff's post-trial motions that he and defense counsel were acquainted, but not friends; that he and defense counsel did not socialize with one another; that he had never known where defense counsel lived other than that they lived in the same parish before the judge moved 17 years previously; and that "this matter has been inflated beyond all reason ***."

The plaintiff now raises a number of related arguments on appeal, alleging that the trial judge was prejudiced in favor of the defense

---

[1] The plaintiff had obtained a change in venue from another trial judge prior to reaching Judge Breen's courtroom.

[2] The plaintiff alleges that sometime after the onset of the trial, plaintiff's counsel asked the trial judge to disclose his wife's relationship with defense counsel and that the trial judge stated that it was "none of your business." However, there is no foundation in the record for these allegations other than certain unsupported statements in the plaintiff's post-trial petitions for a change in venue. The plaintiff, as appellant, has the duty to supply the appellate court with a record of the trial court proceedings. Because there is no reference in the instant record to the conversation cited by the plaintiff, the plaintiff's allegations based upon those conversations shall not be considered on appeal.

and therefore abused his discretion when he refused to grant a change of venue. In essence, the plaintiff maintains that the trial judge possessed a legal duty to inform the plaintiff that he knew defense counsel; that the trial judge refused to permit inquiry into the alleged relationship and interfered with the plaintiff's efforts to make a record in that regard; and that the plaintiff had an absolute right to a change of venue once he set forth specific allegations of prejudice. The plaintiff further argues that the trial judge's alleged prejudice was demonstrated by the manner in which he denied the plaintiff's petition for a change of venue and by the nature of certain rulings made throughout the course of the trial.

■■ As a procedural matter, we do not believe that the plaintiff's oral comments following opening arguments or his two post-trial petitions constituted legally sufficient petitions for a change of venue under the Illinois Civil Practice Act, the law in effect during the relevant time periods in this case. In regard to the oral comments, the Act provides that every application for a change of venue shall be set forth in a petition verified by the affidavit of the applicant. (Ill. Rev. Stat. 1981, ch. 110, par. 503, presently codified at Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(c); *M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.) An unsupported oral request for a change of venue will not suffice to fulfill the Act's requirements. (*Board of Trustees v. Cook County College Teachers' Union* (1976), 42 Ill. App. 3d 1056, 356 N.E.2d 1089; *Peck v. Rockford Life Insurance Co.* (1973), 9 Ill. App. 3d 568, 292 N.E.2d 528.) Because this procedure was not followed in the case at bar, we believe that the plaintiff's comments were without legal effect and did not constitute a petition for a change of venue under the Act.

■ While the plaintiff argues that this "oral petition" was later "formalized" approximately four months later, he cites no authority, and indeed we have found none, that a party need only comply with the terms of the Act after an entire trial has been conducted and an adverse jury verdict has been entered against him.[3] Furthermore, while the plaintiff stated orally that the judge was interrupting, being argumentative and forming conclusions, it was only at the post-trial stage that the plaintiff set forth his allegation that the trial judge was prejudiced because of an alleged relationship with defense counsel. Where the oral comments and the post-trial petitions did not even

---

[3] We believe it is significant that the plaintiff did not attempt to "formalize" his comments for nearly four months. Thus, we are not now considering the legal effect of a verified petition filed immediately following an oral motion.

concern the same subject matter, we do not see how the post-trial petitions could "formalize" the oral comments. The plaintiff was statutorily bound to submit a verified petition for a change of venue when presenting a motion in that regard[4] and his attempt to have a petition, filed nearly four months after his oral comments, relate back to "formalize" his oral comments is legally insufficient under the Act.[5]

■ We also do not believe that either of the plaintiff's two written petitions were timely filed under the Act. Section 503 of the Act provides that:

> "A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, *provided that if any grounds for such change of venue occurs thereafter, a petition for change of venue may be presented based upon such grounds.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 503, presently codified at Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(c).)

■ In the case at bar, it is conceded that all of the plaintiff's alleged petitions for a change of venue were presented after substantial issues in the case had been ruled upon. Therefore, the above underscored section of the statute must be satisfied in order for the plaintiff to prevail on a petition for change of venue. If a petition for a change of venue is presented after a substantial issue in the case has been ruled upon, the petition should be granted only in the sound discretion of the trial court. (*Robinson v. Robinson* (1981), 100 Ill. App. 3d 437, 429 N.E.2d 183; *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 362 N.E.2d 33.) A party does not possess an absolute right to a change in venue after substantial issues in the case have been ruled upon. (See *Templeton v. First National Bank* (1977), 47 Ill.

---

[4]We have assumed for purposes of argument that the plaintiff actually presented an oral request for a change of venue. The record shows that he only stated, "I think perhaps we should take a change of venue," after becoming disgruntled when the trial judge ruled against him following a hearing on a motion. As we have stated, the record does not contain a verified petition; significantly, it also does not contain an order entered by the trial court denying a request for a change of venue.

[5]When the trial court denied the plaintiff's third petition for a change of venue approximately three months following the jury's verdict, the trial judge stated, when pressed by plaintiff's counsel, that "your motion is denied as of any date that it was made, whatever date you might choose ***." While the plaintiff now cites this language to argue that his written petition related back to his oral comments, we find it insufficient to circumvent the Act's clear provision that an application for a change of venue must be set forth in a verified petition. Accordingly, the plaintiff's belated attempt to cure his failure to file a timely petition is legally deficient.

App. 3d 443, 362 N.E.2d 33; *In re Marriage of Pruitt* (1981), 101 Ill. App. 3d 755, 428 N.E.2d 732.) Furthermore, a petition for change of venue must be offered at the earliest practicable moment. (*Fennema v. Joyce* (1972), 6 Ill. App. 3d 108, 285 N.E.2d 156.) The existence of specific allegations as grounds for prejudice does not extend the time for filing a petition for a change of venue indefinitely. (*M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.) In other words, the Venue Act "does not contemplate that a litigant be permitted first to form an opinion that the trial court might be unfavorably disposed towards his cause, and then charge the court with prejudice as a basis for a change of venue." *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 446, 362 N.E.2d 33; see also *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719.

In the case at bar, the sole allegation of prejudice cited to this court by the plaintiff is defense counsel's alleged acquaintance with the trial judge and his wife. The plaintiff first became aware of the alleged relationship at least two days prior to trial. However, he did not file a formal petition for a change of venue until nearly four months later, by which time a trial on the merits had been conducted and the plaintiff had suffered an adverse jury verdict. The alleged relationship was not mentioned by plaintiff's attorney in his oral request for a change of venue during the trial and came to the court's attention for the first time in the plaintiff's post-trial petitions. Under these facts, we do not believe that the plaintiff filed his petitions within a reasonable length of time, and we therefore find that the trial court properly exercised its discretion in denying the plaintiff's post-trial petitions for a change of venue.

Furthermore, even if we were to assume that the plaintiff's petitions for a change of venue were properly and timely filed, we still believe that the trial judge acted well within his discretion in denying them. The plaintiff was required to set forth specific allegations of prejudice in his petitions because his requests for a change of venue occurred after substantial issues in the case had been ruled upon. (See *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 362 N.E.2d 33.) In his oral statements following opening arguments, the plaintiff only stated that the judge was interrupting, being argumentative and forming conclusions. These were not specific allegations of prejudice. (See *Robinson v. Robinson* (1981), 100 Ill. App. 3d 437, 429 N.E.2d 183.) In his post-trial petitions, the only evidence of prejudice supporting the plaintiff's allegations was that defense counsel knew the name of the judge's wife. We do not believe that this is a specific allegation of prejudice capable of supporting a petition for a change of

venue. In a large legal community with its various bar associations and professional organizations, it appears inevitable that judges, attorneys and their respective spouses would become acquainted with one another over a period of years. When the trial judge in the case at bar stated for the record that he and defense counsel were acquainted but not friends, that he and defense counsel did not socialize with one another, and that he had never known where defense counsel lived other than that they had lived in the same parish before the judge moved 17 years previously, that should have been the end of the matter. Unfortunately, it was not. We agree with the trial judge's observation that "this matter has been inflated beyond all reason," and we do not think that the fact that defense counsel knew the judge's wife's name can lead this court to infer as a matter of law that the trial judge was prejudiced against the plaintiff and his counsel. Consequently, we believe that the trial court properly exercised its discretion to deny the plaintiff's petitions for a change of venue.

■ Having found that the plaintiff's alleged petitions were not properly and timely filed and that they could not have prevailed in any event, we shall summarily address certain arguments raised on appeal by the plaintiff. The plaintiff maintains that the trial judge interfered with the plaintiff's efforts to make a record on the issue of prejudice by failing to answer interrogatories and by denying plaintiff's counsel an opportunity to make statements for the record at the post-trial stage. The plaintiff has cited no authority that a trial judge must answer interrogatories propounded by the attorneys arguing before him and we cannot find any support in the law for the plaintiff's contention. As we have already stated, the trial judge's explanation of his acquaintance with defense counsel should have put the matter to rest. Furthermore, the record reveals that plaintiff's counsel was not allowed to make statements at the post-trial stage because the parties had waived oral arguments and agreed that the matter would proceed upon the written post-trial motions filed by the parties. Accordingly, we find no merit in the plaintiff's argument.

■ The plaintiff further contends that the trial judge's alleged prejudice was demonstrated by the manner in which he denied the plaintiff's petitions for a change of venue and by the nature of certain rulings made throughout the course of the trial. We disagree. "Wide latitude must be allowed a trial judge in conducting a trial, and only where his conduct or remarks are of the sort that would ordinarily create prejudice in the minds of the jurors is reversible error present." (*Vinke v. Artim Transportation System, Inc.* (1980), 87 Ill. App. 3d 400, 412, 408 N.E.2d 1112, 1122.) All of the stages of the

instant litigation were marked by acrimonious and contentious inter-changes between the attorneys. In its attempt to keep these heated exchanges to a minimum, the trial court dealt with the attorneys' comments firmly and reasonably. We find no support in the record that the judge's remarks were of the sort that would create prejudice in the minds of the jurors and we cannot state that any instance of reversible error was present.

The plaintiff next argues on appeal that the trial judge abused his discretion and committed reversible error when he failed to enter discovery sanctions against the defendant under Illinois Supreme Court Rule 219 (87 Ill. 2d R. 219). The plaintiff cites three discovery violations perpetrated by the defendant, alleging that the defendant falsely answered two interrogatories and testified falsely at one point during his discovery deposition. The plaintiff's brief is somewhat un-clear as to what remedy he asks this court to impose, but it was al-leged during oral arguments that he seeks either an outright reversal of the jury's verdict or a new trial.

We shall first examine the discovery violations cited by the plain-tiff. The defendant was given an interrogatory which inquired whether any photographs had been taken of the vehicles in question. The defendant answered in the negative. It later came to light that photographs had been taken of the plaintiff's vehicle but that they were totally illegible after they had been developed. A copy of the sheet of paper with the "photographs" attached is part of the record on appeal, and absolutely no objects or persons are discernible on this seemingly blank sheet of paper. The sheet of paper was tendered to the plaintiff approximately seven months before trial and was in the plaintiff's possession at the time of the hearing on his motion for sanctions. The plaintiff now argues that he was prejudiced because he did not have the "photographs" in his possession during many of the depositions he had taken prior to trial.

The second discovery violation cited by the plaintiff is that the defendant withheld the name of a witness who had "knowledge of the facts of said occurrence" when the defendant responded to the plain-tiff's interrogatories. The witness, Thomas Donaldson, had inspected the defendant's vehicle soon after the accident. His identity was not disclosed until approximately five years after the defendant had an-swered the interrogatories. The defendant states that he had no knowledge that Donaldson had inspected the vehicle until that time and promptly included his name in an answer to supplemental discov-ery. Donaldson's deposition was taken by the plaintiff approximately three months prior to the plaintiff's motion for sanctions and approxi-

mately six months prior to the onset of the trial. The plaintiff now contends that he was prejudiced because Donaldson's deposition was not taken until nearly eight years following his claimed inspection of the vehicle.

The final discovery violation cited by the plaintiff in his brief is that the defendant testified falsely at his discovery deposition when he failed to disclose the identity of another witness. Three years after the deposition, the defendant disclosed that Larry Novak was a witness to some of the events pertinent to the case. Apparently, Novak was deposed by the plaintiff prior to both the trial and the hearing on the plaintiff's motion for sanctions. However, neither his deposition nor his trial testimony have been included by the plaintiff in the record on appeal. The plaintiff claims that he was prejudiced by statements made by Novak during the trial, but because these matters are totally outside of the record, this court shall not consider them on appeal.

At the hearing on the plaintiff's motion to impose sanctions, the trial court noted that the "photographs" had been given to the plaintiff and that the plaintiff had already deposed Donaldson. He stated that the alleged discovery violations had been "cured" and that his aim in compelling discovery was not to "punish anyone." He further stated in regard to Donaldson that the plaintiff had been unable to show that he had been prejudiced in any way by the delayed deposition and stated, "I can't presume prejudice. If you can show some prejudice, I can consider that ***." The trial court did not enter discovery sanctions against the defendant, and the plaintiff now contends that the court abused its discretion in refusing to do so.

The appropriate sanction for a party's noncompliance with discovery rules is a matter within the trial judge's broad discretion. (*Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214.) The decision to employ or not to employ sanctions is also discretionary. (*Ferenbach v. DeSyllas* (1977), 45 Ill. App. 3d 599, 359 N.E.2d 1214.) In its determination of whether sanctions should be imposed, the trial court must seek to accomplish discovery rather than to inflict punishment. (*Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904; *Hagensee v. Jeffrey Galion, Inc.* (1981), 93 Ill. App. 3d 675, 417 N.E.2d 733.) Furthermore, the trial court's discretion in selecting appropriate sanctions is broad, and will not be disturbed on appeal unless an abuse is present. (*Wach v. Martin Varnish Co.* (1981), 96 Ill. App. 3d 954, 422 N.E.2d 172.) In other words, the appellate court's scope of review of the trial court's decision to impose or not to impose sanctions is limited to whether the trial court abused

its discretion. *Bailey v. Twin City Barge & Towing Co.* (1979), 70 Ill. App. 3d 763, 388 N.E.2d 789.

In determining whether noncompliance with discovery orders or rules is unreasonable, the standard is whether the offending party's conduct is characterized by a deliberate and pronounced disregard for the discovery rules and for the court. (*Valdivia v. Chicago & North Western Transportation Co.* (1980), 87 Ill. App. 3d 1123, 409 N.E.2d 457.) When a party has failed to inform his opponent of the existence of a witness, the trial court, within its discretion, should consider the surprise, if any, to the opposing party; the good faith of the party seeking to call the witness in respect to the notice given the opposition; equal opportunity and access for the opposing party to interview or depose the witness prior to trial; and prejudice which may result from the proposed testimony. *Lindley v. St. Mary's Hospital* (1980), 85 Ill. App. 3d 559, 406 N.E.2d 952.

In the case at bar, we believe that the trial court acted within its discretion in deciding not to impose discovery sanctions against the defendant. While violations of the discovery rules are certainly not to be condoned, the trial judge correctly observed that his aim was to compel discovery rather than to inflict punishment. The plaintiff received the "photographs" and deposed Donaldson well in advance of both the hearing on his motion for sanctions and the trial itself. Furthermore, the resulting prejudice cited by the plaintiff is hardly of a substantial nature. The photographs that were withheld from the plaintiff were illegible. The plaintiff has been unable to cite any real instance of prejudice, and we do not see how he could have been prejudiced when the photographs were unavailable during some of the depositions in this case. In addition, the trial judge stated that the plaintiff had been unable to demonstrate any prejudice as the result of his belated deposition of Donaldson. We cannot find under the facts of this case that the trial court abused its broad discretion not to impose discovery sanctions against the defendant.[6]

Before leaving this issue, however, we feel compelled to address a troublesome matter which the plaintiff has called to this court's atten-

---

[6]In another case decided today by this court, the broad discretion of the trial judge to *impose* discovery sanctions was also upheld. In *In re Estate of Soderholm* (1984), 127 Ill. App. 3d 871, the plaintiffs had intentionally destroyed a number of diaries which were directly pertinent to the central issue of the case. This court found that given such deliberate and contumacious conduct, the trial court had not abused its broad discretion when it entered a judgment by default against the plaintiffs. Significantly, we reiterate that the trial court possesses broad discretion to either impose *or* deny discovery sanctions.

tion. The plaintiff argues that the defendant has engaged in "fractional" discovery of the sort condemned by the Illinois Supreme Court in *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460. Specifically, the plaintiff maintains that the defendant, the defendant's counsel, the defendant's employer and the defendant's insurance company did not communicate with one another concerning discovery requests by the plaintiff and that as a result, the "photographs" and Donaldson's identity were not provided to the plaintiff until years after the plaintiff initially requested them in his interrogatories. The defendant explains that the plaintiff was already aware of the photographs prior to their production and that "the defendant had no knowledge that Donaldson had any knowledge of the occurrence," when Donaldson was employed by the company that was also a defendant in this case. The knowledge possessed by Donaldson, the employee, must be imputed to the defendant employer. (See *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511.) We believe that there is support in the record for the plaintiff's contentions.

Fractional discovery and fractional disclosure are not to be tolerated. (See *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460.) The defendant, defense counsel, the defendant's employer and the defendant's insurance company had the legal duty to communicate with one another regarding the plaintiff's discovery requests, and because they did not do so, they may not hold up their ignorance as any sort of a defense to their failure to fully comply with discovery. (See *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511.) The conduct of the defense was inexcusable and their explanations for engaging in such conduct are wholly unsatisfactory. However, the trial court found that the defendant had ultimately complied with the discovery requests well before trial and, most significantly, that the plaintiff had suffered no real prejudice as a result of the defendant's discovery violations. In *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511, the defense had withheld the name of the company which maintained the hotel floor upon which the plaintiff had fallen. The plaintiff did not become aware of the existence of the company until immediately before the trial. As a discovery sanction, the trial court excluded the testimony of four defense witnesses who had worked for the company, stating that the plaintiff did not have an adequate opportunity to investigate the truth of the surprise evidence or to depose the witnesses. In *In re Estate of Soderholm* (1984), 127 Ill. App. 3d 871, another case decided today by this court, we found that the trial court had properly entered a default

judgment as a discovery sanction against parties who had intentionally destroyed physical evidence that was pertinent to the central issue of the case. In both *Campen* and *Soderholm,* the prejudice resulting from the discovery violations was apparent. In *Campen,* the plaintiff's discovery of the company on the eve of the trial denied the plaintiff the ability to pursue critical lines of investigation and in *Soderholm,* the destroyed physical evidence could not be replaced. No such prejudice is present in the case now before this court. As we stated earlier, this court may not second-guess the trial court's decision not to impose sanctions; our sole function on appeal is to determine whether the trial judge abused his discretion. We cannot say that such an abuse was apparent under these facts.

The plaintiff further argues that the defense attorney in this case and the same insurance company had engaged in similar discovery violations in other cases and contends that this "deliberate and contumacious" conduct warrants the imposition of a sanction of judgment in the plaintiff's favor. The plaintiff cites *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511, in support of his argument. However, the *Campen* decision has no reference whatsoever to any misconduct on the part of defense counsel or the defendant's insurance company. The only persons cited for engaging in discovery violations were the clients of defense counsel. The plaintiff nonetheless contends that defense counsel and the defendant's insurer were chastised several times at the trial level in the *Campen* case for refusing to comply with discovery requests. However, the portions of the *Campen* trial record cited in the plaintiff's brief were not a part of the appellate opinion in that case and are totally outside the record here. Accordingly, the plaintiff's contentions are without merit.

■ The third issue raised by the plaintiff on appeal is whether the trial judge committed reversible error when he excluded from evidence the defendant's related conviction in a traffic court case. The defendant was convicted following a plea of not guilty under the "hit and run" provisions of the Illinois Vehicle Code. The conviction stemmed from the same occurrence that serves as the focus of the instant lawsuit. The trial judge in the instant case excluded evidence of the conviction offered to prove the facts upon which the conviction was based. The plaintiff now claims that this exclusion constituted reversible error.

In *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160, the court found for the first time in Illinois that under certain circumstances, proof of a conviction may be admitted into evidence at

a subsequent civil trial to prove the facts upon which the conviction was based. Such a conviction is allowed into evidence as an exception to the hearsay rule. (See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.21 (4th ed. 1984).) In *Smith*, the court found that the defendant's previous conviction of rape, a felony, was admissible in a later civil case as *prima facie* evidence that the defendant had in fact committed a rape. In reaching its decision, the court commented upon the distinction between allowing a defendant's plea of guilty into evidence under the judicial admission exception to the hearsay rule and allowing a defendant's actual conviction following a plea of not guilty to be used as evidence of the facts supporting the conviction. The guilty plea is not offered to prove the essential facts of the case but rather to prove that the offender admitted.facts constituting guilt. (See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 802.4 (4th ed. 1984).) In contrast, a conviction in a previous criminal case is offered as *prima facie* evidence of the facts upon which the conviction is based. A guilty plea offered as an admission and a conviction offered to prove the facts upon which it was based are conceptually different and require different analyses; however, the result of admission of both types of evidence shall often produce the same ultimate effect in that the trier of fact has before it facts concerning the incident which led to the guilty plea or conviction. (See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 802.4 (4th ed. 1984).) In *Smith*, the court found that because of all of the constitutional safeguards available to the defendant at his criminal trial, his conviction after a plea of not guilty constituted reliable evidence which was consequently admissible at a later civil trial as evidence of the facts supporting the conviction.

In *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, the Illinois Supreme Court approved the appellate court's reasoning in *Smith* and further expanded this limited exception to the hearsay rule to include the admissibility of certain misdemeanor convictions at later civil proceedings. The court found that a defendant's conviction of battery should have been admitted in a later civil case as *prima facie* evidence that the defendant's striking of the plaintiff constituted a battery. The court specifically stated, however, that it declined to decide at that time whether all misdemeanor convictions should be admissible in later civil proceedings arising from the same facts.

The courts of Illinois have not yet decided whether minor criminal matters such as traffic offenses should be included in the hear-

say exception carved out by *Smith* and *Thornton*.[7] (See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.21 (4th ed. 1984).) In *dicta*, however, the court in *Smith* stated:

> "[W]e would not want our decision in this case to be interpreted as a holding that every conviction following a plea of not guilty is admissible in evidence in a later case involving the facts upon which the conviction is based. \*\*\* For example, our holding in this case would not be authority for the admissibility of a traffic court conviction in a later civil case arising out of a traffic accident. Defendants in traffic cases are frequently unrepresented by counsel, and the proceedings are relatively informal. In view of the comparatively modest penalty a defendant faces on a judgment of conviction, the charge is rarely contested with the vigor that characterizes the adversary system at its best." (*Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 62, 203 N.E.2d 160, 165-66.)

Furthermore, an annotation in the American Law Reports on the subject offers an additional rationale for excluding traffic court convictions in later civil proceedings:

> "It may \*\*\* be reasonably argued that the rule of exclusion should be continued as to convictions for minor traffic violations and other offenses of the kind, where the safeguards afforded the accused may be more or less perfunctory, and a moderate fine may be accepted as a matter of convenience, since such convictions may be given undue weight in civil actions involving large sums of money. \*\*\*
>
> Because of the often perfunctory nature of the 'criminal' proceedings in such cases, and because of the fact that such convictions are frequently uncontested, it appears that the courts should be especially reluctant to admit such evidence in

---

[7]In *O'Dell v. Dowd* (1981), 102 Ill. App. 3d 189, 429 N.E.2d 548, a case cited by neither of the parties to this action, the court found without analysis that a defendant's traffic court conviction for driving too fast for conditions was admissible in a later civil case. A close examination of *O'Dell* discloses, however, that the defendant had entered a guilty plea in the traffic court case and the plaintiff in the civil case sought to introduce the guilty plea into evidence as an admission. A number of Illinois cases have allowed a plea of guilty to a traffic offense to be admitted in a subsequent civil proceeding as an admission. (*Hartigan v. Robertson* (1980), 87 Ill. App. 3d 732, 409 N.E.2d 366; *Cogdill v. Durham* (1976), 43 Ill. App. 3d 940, 358 N.E.2d 6.) Thus, despite certain language to the contrary, we do not think *O'Dell* stands for the proposition that the actual *conviction* of a defendant in a traffic court case may be admitted, as *prima facie* evidence of the facts supporting the conviction, in a subsequent civil proceeding.

these proceedings." (Annot., 18 A.L.R.2d 1287, 1290, 1295 (1951).)

This topic was also peripherally discussed by Professor McCormick in his treatise on evidence, where he observed that the rationale for admission of a criminal conviction hinges upon whether the conviction possesses an adequate assurance of reliability and whether the defendant in the criminal action possessed both the opportunity and the motive to fully defend himself. McCormick, Evidence sec. 318 (2d ed. 1972).

We have encountered a similar rationale for the exclusion of traffic court convictions in decisions handed down by other State courts. In *Montalvo v. Morales* (1963), 18 App. Div. 2d 20, 239 N.Y.S.2d 72, the court found that the defendant's conviction for failure to yield the right-of-way was properly excluded from evidence in a later personal injury and wrongful death action. The court stated that while a judgment of conviction in a criminal action is generally admissible in a later civil case, the admission of a conviction for a traffic offense is an exception to this general rule. The court stated that a traffic court conviction is "often the result of expediency and compromise" and went on to explain:

> "The proceedings in the traffic courts are almost universally regarded as *sui generis* \*\*\*. To apply them to the evidentiary sanction which has been engrafted upon criminal and quasi-criminal proceedings—proceedings which are more solemn in their accusations and consequences—would be pressing logic beyond realities [citations]. Thus treated, traffic court proceedings would undoubtedly become the first and perhaps the crucial stage in numerous negligence actions \*\*\*." (*Montalvo v. Morales* (1963), 18 App. Div. 2d 20, 25-26, 239 N.Y.S. 2d 72, 77.)

Similarly, in *Loughner v. Schmelzer* (1966), 421 Pa. 283, 218 A.2d 768, the court held that evidence of the conviction of a traffic violation or of small misdemeanors is not admissible in a civil suit for damages arising out of the same traffic violations or lesser misdemeanors. Again, the court found this to be an exception to the general rule of admissibility of criminal court convictions. Relying upon *Hurtt v. Stirone* (1965), 416 Pa. 493, 499, 206 A.2d 624, 627, the court observed, "Especially in traffic violations, expediency and convenience, rather than guilt, often control the defendant's 'trial technique.' " 421 Pa. 283, 285, 218 A.2d 768, 769.

We find the above case law and authorities to be persuasive. *Smith*, the first case in Illinois which allowed criminal convictions to

be admissible in later civil actions, specifically limited its ruling to exclude the admission of traffic court convictions. We believe this reasoning is sound. A traffic court conviction will often result from expediency, convenience and compromise; the constitutional safeguards are often ·perfunctory and the defendant's opportunity and motive to defend vigorously are often lacking. We do not believe that such a traffic court conviction possesses the adequate assurance of reliability necessary to justify its admission into evidence at a later civil trial based upon the same facts. To hold otherwise, we believe, could conceivably turn a mechanical and summary traffic court hearing into the cornerstone of a significant civil action filed after the conclusion of the criminal proceedings.

We think that these observations find support in the record now before us. While the defendant was represented by counsel at the traffic court proceedings, the record shows that the proceedings lasted approximately five or ten minutes and were fairly informal. No witnesses were subpoenaed by the defendant, no exhibits were presented by the defense and no motion to exclude witnesses was ever presented by the defendant's attorney. The State's primary witness engaged in a colloquy with the trial judge, after which defense counsel had no opportunity to cross-examine her. In fact, the State's principal witness was never cross-examined by the defense. The defendant's traffic court lawyer was deposed in the instant action and stated that he never had any opportunity to represent his client's position at trial and that the witnesses at the trial were interjecting answers between themselves. No closing arguments were made. Under these facts, we believe that the defendant's traffic court conviction is lacking in the reliability necessary to justify its admission in a later personal injury action. For these reasons, we cannot find that the trial court in the case at bar committed error when it excluded the defendant's prior traffic court conviction from evidence.

■ The fourth issue of trial error raised by the plaintiff on appeal is whether the trial court committed reversible error when it prohibited the plaintiff from cross-examining the defendant and a police investigator concerning the fact that the defendant was arrested following the automobile accident. Specifically, the plaintiff maintains that the investigator, who stated at trial that he found no damage to the defendant's vehicle following his examination, could have been impeached at trial had the court allowed the plaintiff to bring in evidence that the investigator had arrested the defendant. Further, the plaintiff argues that the defendant himself could have

been impeached at trial because the defendant did not tell a version of the occurrence at the time of his arrest that he later told at the civil proceeding. The plaintiff sought to introduce the fact of the defendant's arrest to elicit this purportedly inconsistent behavior. Because the trial court prohibited the plaintiff from mentioning the fact that the defendant had been arrested, the plaintiff now contends that reversible error was present because he was denied an avenue of impeachment. We disagree.

We have already found that the defendant's traffic court conviction was properly excluded from evidence at the civil proceeding. Where the actual traffic court conviction did not constitute reliable evidence, it follows that unfair prejudice would result if the jury was advised of the fact that the defendant was arrested for the same charge that led to his conviction. Where a defendant does not plead guilty to a traffic offense, the fact that the defendant was arrested for the offense is not admissible in a subsequent civil proceeding. (*Miyatovich v. Chicago Transit Authority* (1969), 112 Ill. App. 2d 437, 251 N.E.2d 345; see also *Allen v. Yancy* (1965), 57 Ill. App. 2d 50, 206 N.E.2d 452.) The probative value of admitting such evidence is substantially outweighed by the danger of unfair prejudice. (See generally *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Significantly, the plaintiff in the case at bar does not argue that the facts surrounding the defendant's arrest could be excised and mentioned to the jury without reference to the actual arrest; thus, we are not here considering a case where the inadmissible evidence of the arrest itself would not be presented to the trier of fact. Consequently, the trial court properly prohibited the plaintiff from mentioning the circumstances of the defendant's arrest.

■■ The plaintiff next contends on appeal that the trial court committed reversible error when it allegedly permitted defense counsel to violate an *in limine* ruling. The brother of the plaintiff's wife was a precinct captain who was under Federal indictment for vote fraud. In a pretrial motion *in limine*, the plaintiff sought to exclude any references at trial to the brother's indictment. The trial court entered its order finding that the fact of the indictment could not be revealed to the jury; the order made no reference to whether the brother's name could be mentioned at trial. Subsequently, defense counsel mentioned the brother's name on a number of occasions during the trial. The brother had been with the plaintiff's wife when the police examined one of the vehicles involved in the case, and his name came up a number of times when defense counsel questioned witnesses concerning this examination by the police. Nowhere in the

record does either defense counsel or any of the witnesses make a reference to the brother's indictment for vote fraud. The terms of the *in limine* ruling were complied with and we recognize no instance of reversible error.

■■■ The sixth allegation of trial error raised by the plaintiff concerns the exclusion from evidence of a report prepared by an investigator hired by the plaintiff. The report was offered by the plaintiff as alleged impeachment of a defense witness. At the outset, we observe that the record before this court has no reference to any ruling issued by the trial judge or to the grounds for issuing a rule in this regard. While the appealability of this matter is questionable, we shall nonetheless address the parties' contentions.

The plaintiff's investigator interviewed one of the defendant's occurrence witnesses soon after the automobile accident. The investigator's report was several sentences long and included the investigator's comment: "She stated to me that she really didn't see too much of anything." The plaintiff contends that the witness' statement to the investigator was impeaching because it did not mention the version of the accident which the witness later related at trial. During his deposition, the investigator testified that he could not remember interviewing the witness and could not recall any of her answers to his questions. He further stated that he could not remember asking her any questions regarding the version of the incident she later told at trial. The investigator could not describe the witness and he had not retained his notes from his interview with the witness. He further testified at his deposition that his report was: "My description of what she told me." In addition, the investigator testified that it was his usual practice when preparing a report to include "substantially the verbatim language of the witness." Although the record is silent, the trial court apparently would not allow the investigator's statement to be read to the jury or allowed into evidence. The plaintiff now maintains that this exclusion constituted reversible error.

The plaintiff contends that the report should have been admitted into evidence under the "past recollection recorded" exception to the hearsay rule. We do not believe that this is a problem concerning a hearsay exception. Hearsay evidence is in-court testimony or written evidence of a statement made out of court which is offered as an assertion of the truth of the matters contained in the out-of-court statement. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738; McCormick, Evidence sec. 246 (2d ed. 1972); E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801 (4th ed. 1984);

Fed. R. Evid. 801.) In other words, if evidence is allowed as an exception to the hearsay rule, it is offered as evidence of the truth of the matters contained in the out-of-court statement. However, the essence of the plaintiff's argument in the case at bar is not that the investigator's report should have been allowed as evidence of its truth, but rather that it should have been allowed at trial for impeachment purposes as the witness' prior inconsistent statement. When a statement containing a witness' inconsistent testimony is offered for impeachment purposes and not for the truth of its contents, the hearsay rule does not act as a bar to its presentation at trial. (*People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564; *Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345; see also E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801.9 (4th ed. 1984); 3A Wigmore, Evidence sec. 1018 (Chadbourn rev. 1970); 6 Wigmore, Evidence sec. 1766 (Chadbourn rev. 1970).) Consequently, because the report in the case at bar was not offered for its truth, the reliance of both the plaintiff and the defendant upon case law concerning the "past recollection recorded" exception to the hearsay rule is irrelevant.

■■■ The proper focus on this issue should be whether the investigator's report constituted admissible evidence for impeachment purposes, an inquiry not dissimilar to an analysis of the past-recollection-recorded exception to the hearsay rule and yielding similar results. We believe that the report was properly excluded by the trial court because the investigator did not have adequate firsthand knowledge of the matters contained in the report. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Fed. R. Evid. 602; see also McCormick, Evidence secs. 10, 247 (2d ed. 1972); E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 602.1 (4th ed. 1984).

In the case at bar, the report prepared by the investigator does not reflect adequate firsthand knowledge of the comments made by the witness following the accident. The investigator could not remember interviewing the witness; could not recall any of her answers to his questions; could not describe the witness; did not retain his notes of the interview; and could not recall whether he asked the witness any questions regarding the version of the incident that the witness related at trial. The investigator did not take down the witness' verbatim statement but rather recorded a "description of what she told me." The investigator summarized, "she stated to me that she really didn't see too much of anything." In sum, when the

investigator's report is considered in this context, we do not believe that the report reflected adequate firsthand knowledge of the witness' statement because it is simply a summary of the investigator's impressions of the knowledge possessed by the witness. Because the investigator could offer only his impressions rather than firsthand knowledge regarding the facts upon which the interview was based, we do not believe that the summary contained in his report was reliable firsthand evidence of a prior inconsistent statement made by the witness. Preliminary questions of fact concerning the admissibility or competency of evidence are generally matters decided by the trial court. (See *Silverman v. General Motors Corp.* (1981), 99 Ill. App. 3d 593, 425 N.E.2d 1099; see also E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 104.1 (4th ed. 1984).) We believe that the trial court was correct in excluding the investigator's report from evidence.

■■ The plaintiff next argues that the trial court erroneously refused to allow the plaintiff's counsel to question the plaintiff's wife concerning an unrelated automobile accident in which she was involved. Specifically, the plaintiff maintains that his wife had testified at her deposition that there had been rear end damage to the plaintiff's car and that a new bumper was mounted as the result of the accident at issue in the case at bar. In fact, there was apparently no rear end damage to the car, because the defendant's vehicle never struck the plaintiff's vehicle. Defense counsel impeached the plaintiff's wife's testimony at trial through the use of her deposition testimony. The plaintiff now argues that the plaintiff's wife was involved in another automobile accident following the accident at issue here and that her car was damaged in the rear during the second accident. Thus, the plaintiff contends that the plaintiff's wife may have confused the two accidents at her deposition and that the trial court should have allowed evidence of the second automobile accident during the redirect examination of the plaintiff's wife to rehabilitate her inconsistent testimony during cross-examination.

We believe that the trial court properly exercised its discretion to limit admission of the evidence. The second automobile accident was not relevant in the instant litigation other than to explain the plaintiff's wife's answers during cross-examination. To bring in this additional and collateral evidence of an unrelated accident solely for purposes of rehabilitation would be unnecessarily confusing and unwieldy. Whether certain useful evidence which may have the danger of confusing the issues should be admitted into evidence is left to the sound discretion of the trial court. (*Couillard v. Elgin, Joliet &*

*Eastern Ry. Co.* (1974), 21 Ill. App. 3d 914, 316 N.E.2d 541.) We believe that the trial court properly exercised its discretion to exclude evidence of the second automobile accident.

Furthermore, even if we accept for purposes of argument the plaintiff's contention that error was present, we cannot see where such error would constitute reversible error in the context of this record. The plaintiff's wife was impeached on a number of other occasions and the plaintiff himself stated at trial that his automobile had suffered rear end damage in the instant occurrence. Furthermore, the hearing on the defendant's traffic court violation took place before the second accident occurred. At that hearing, the plaintiff testified that their car had been struck in the rear during the instant occurrence, and the plaintiff's wife testified that the defendant's automobile had struck their vehicle. We thus believe that the competency and the usefulness of evidence concerning the second automobile accident are marginal at best, and we cannot find that exclusion of such evidence would rise to the level of reversible error even if error is in fact present.

■ The plaintiff also claims that the trial court committed reversible error when it granted summary judgment in favor of the defendant's employer. The plaintiff sought to hold the employer liable under the theory of respondeat superior because the defendant was driving a car leased by the employer at the time of the automobile accident. The plaintiff now maintains that the employer may have derived a benefit from the plaintiff's use of the car and that therefore summary judgment was improper. However, the defendant had already left work and was on his way home when the accident occurred. There was absolutely no evidence that the defendant was acting within the scope of his employment at the time of the accident or performing any activity that benefitted his employer. (See *Brehm v. Dobson* (1973), 15 Ill. App. 3d 285, 304 N.E.2d 149; *Miller v. National Automobile Sales Co.* (1913), 177 Ill. App. 367.) Accordingly, there was no genuine issue as to any material fact and we believe that summary judgment was properly granted in favor of the defendant's employer.

■ As a final matter, the defendant maintains that the trial court abused its discretion when it denied the defendant's motion for fees and expenses under section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611). In a post-trial motion, the defendant alleged that the plaintiff's allegations were made without good faith and were found to be untrue. The defendant further stated that the plaintiff had created three differ-

ent versions of the incident since the onset of this lawsuit; that the plaintiff often testified inconsistently; and that the plaintiff and his witnesses were impeached on a number of occasions. For these reasons, the defendant maintains that he was entitled to fees and expenses and that the trial court abused its discretion when it denied the defendant's motion in that regard.

Although the plaintiff has cited absolutely no legal authority in his defense, we disagree with the defendant's contentions. The denial of a motion for fees and costs pursuant to section 2—611 rests within the discretion of the trial court, and a court of review will not disturb that determination unless there is a clear showing that such discretion was abused. (*Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119; *Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297.) A full jury trial on the merits was conducted in this case, and the trial judge had a full opportunity to hear all of the evidence presented and assess the credibility of the witnesses of both parties. We believe there are sufficient facts of record to support the trial court's exercise of its broad discretion to deny the defendant's motion for fees and costs.

For the foregoing reasons, the decision below is affirmed in all respects.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.