FRANK KASSELA, Plaintiff-Appellant, *v.* RICHARD STONITSCH *et al.*, d/b/a L&R Contractors, Defendants-Appellees.

First District (3rd Division)    No. 62624

Opinion filed February 15, 1978.

Michael J. Goldstein, of Chicago, for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard and Paul V. Kaulas, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

This case involves a collision between two vehicles on Caton Farm Road in Will County, a road running in an east-west direction. The collision occurred during daylight and in dry, clear weather. Caton Farm Road had a blacktop or tar pitch with no painted line dividing the east-bound and west-bound lanes. The speed limit was 35 miles per hour. Plaintiff and defendant were the only eyewitnesses to the collision.

Plaintiff was driving west-bound and defendant in the opposite direction. When their vehicles collided, defendant was just over the crest of a hill 19 feet 4 inches above the bottom of the hill and plaintiff had almost reached the crest of the same hill. Proceeding up the hill from either side, it was not possible to see a vehicle coming from the other side. When driving up the west side of the hill, as defendant was doing, a driver

is forced to move his vehicle continually to the left because the road narrows toward the center as it ascends the hill.

Plaintiff testified he knew he was on the proper side of the roadway as he drove up the hill because he consistently kept his vehicle within a foot of the north shoulder. Defendant testified that as he ascended the hill he could not see over the crest. When he first saw plaintiff's vehicle, defendant attempted to steer to the right to clear plaintiff's vehicle. Two or three seconds elapsed from the time defendant saw plaintiff's vehicle until the collision. Defendant acknowledged that he was not sure that at the moment of impact he was totally within the eastbound lane of the road. Plaintiff testified he did not see defendant's vehicle until a moment or two before the accident, and defendant appeared to be driving down the center of the road about 2½ feet over the center line. The left front foot and one-half of each vehicle made contact.

Defendant testified that both vehicles were traveling 30 to 32 miles per hour. Plaintiff's testimony was that defendant appeared to "be going twice the speed of my vehicle, at least around 60 miles per hour."

Plaintiff sued to recover for personal injuries he claimed to have suffered. The case was tried before a jury, which found for the defendant, as well as for his codefendants, his brother and business partner, and the partnership which used the vehicle driven by defendant in its business. In answer to a special interrogatory submitted by defendant, the jury specifically found that plaintiff had been guilty of contributory negligence.

Robert Leroy, a police officer for 3½ years, arrived at the scene a few minutes after the accident, before either vehicle was moved. Prior to observing these vehicles, he had worked on about 100 accident cases, and received 6 weeks of training in accident investigation or reconstruction at a police training institute. Leroy was called as a witness by defendant. When asked over plaintiff's objection whether he was able to determine by looking at the debris where the impact took place, Leroy responded, "Right in the middle of the roadway." The court immediately instructed the jury that the answer was not responsive and was incompetent testimony. Leroy's further testimony related to his observations of the position of the debris in the roadway.

There was testimony at the trial regarding plaintiff's use of seat belts. A physician specializing in orthopedics was called by plaintiff to testify concerning the extent of plaintiff's injuries. On cross-examination, he testified:

"Q. Do you have an opinion as to whether or not a seat belt or the use of a seat belt would have prevented the type of injury Mr. Kassela had?

A. I think seat belts help, yes."

The next morning, plaintiff's counsel moved to strike this testimony and to prohibit defendant from again injecting the subject of seat belts into the trial. This motion was denied.

Plaintiff later was asked on cross-examination, over his counsel's objection, if his vehicle was equipped with seat belts and if he had been wearing them when the collision occurred. Plaintiff argued that seat belt testimony was inadmissible except in mitigation of damages, and then only if a proper foundation was laid by expert testimony. The plaintiff's motion for a mistrial because of the reference to seat belts was denied, and his objection to the seat belt question was overruled. Upon resumption of the cross-examination, plaintiff testified that he did not know whether he was wearing his seat belt at the time of the accident.

Both parties tendered instructions about the use of seat belts, but the trial judge refused to give any instruction on this subject. He reasoned that his notes showed only one question relating to seat belts, and said he saw no reason for expanding the issue.

Defendant called Donald S. Berry, a professor of civil engineering at Northwestern University, and sought to have him testify, as an expert witness, about the relative speeds of the vehicles as determined by their weights and locations and by the location of the debris after the collision. The court sustained objections to Professor Berry's testimony, allowing only the portion relating to his qualifications and the formula he used to determine the amount of kinetic energy a vehicle would have. Over plaintiff's objection, defendant's counsel asked Professor Berry a series of questions designed to elicit the witness' opinion on the speed of the vehicles prior to the impact. Plaintiff claimed at trial, as well as before this court, that he was prejudiced by defendant's continued efforts to introduce incompetent evidence through Professor Berry, which required plaintiff to present numerous objections and created an impression on the jurors that plaintiff was attempting to conceal evidence.

■■ The propriety of seat belt testimony in Illinois has been accurately and exhaustively analyzed in *Dudanas v. Plate* (1976), 44 Ill. App. 3d 901, 358 N.E.2d 1171, and *Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 335 N.E.2d 774, which establish the following rules: (1) The seat belt defense is to be rejected on the issue of contributory negligence; and (2) Although reference to use of seat belts may be permissible on the issue of damages, even for that purpose it should be admitted only where a defendant has established by competent evidence a causal connection between the plaintiff's failure to use a seat belt and the injuries he sustained.

Here, the only evidence which related to the causal connection between plaintiff's injuries and use of seat belts was the testimony of plaintiff's physician. His response to whether the use of a seat belt would have prevented the type of injury plaintiff suffered was vague and

ambiguous. The physician was not shown to have had the experience or qualifications to testify regarding the possible connection between the use of seat belts and the injury plaintiff sustained, or to provide the type of competent evidence required to establish such a connection. The damage done by failing to strike the physician's answer then was aggravated when defendant was permitted to ask whether plaintiff was using a seat belt.

Defendant refers to several decisions in which the use of seat belts was discussed, but none of them support his contention that the testimony regarding seat belts was properly admitted in this case. *Mount v. McClellan* (1968), 91 Ill. App. 2d 1, 5, 234 N.E.2d 329, 331 was the first Illinois case holding seat belt testimony may properly be admitted on the question of damages. The court there stated, "Use of seat belts would have no relevancy in determining the cause of an accident." Neither *Blitz v. Checker Taxi Co.* (1972), 8 Ill. App. 3d 361, 290 N.E.2d 291, nor *Heiser v. Chastain* (1972), 6 Ill. App. 3d 552, 556, 285 N.E.2d 601, where the injured plaintiffs prevailed in the circuit court and the defendants were attacking judgments against them, sanction the use of seat belt testimony. In both cases plaintiffs' judgments were affirmed notwithstanding evidence that the plaintiffs, passengers in taxicabs, were not wearing seat belts with which the cabs were equipped. Plaintiffs, as appellees, did not raise any issue as to the propriety of the evidence of their failure to use seat belts. One of the reasons for reversal in *Allison v. Howell* (1974), 22 Ill. App. 3d 287, 291, 317 N.E.2d 379, was that the defendant argued nonuse of seat belts by plaintiffs showed they did not exercise due care for their own safety. *Josel v. Rossi* (1972), 7 Ill. App. 3d 1091, 288 N.E.2d 677, is different from this case because the court there was not asked to determine whether testimony regarding seat belts was improperly admitted when not tied up with competent evidence establishing that their use would have mitigated plaintiff's injuries. In that case, a judgment for the defendant was reversed because an obviously improper jury instruction stated that a person has a duty to use seat belts when they are available, and the plaintiff's failure to wear a seat belt could be considered in determining the proximate cause of his injury. Although a judgment for the defendant was affirmed in *Havlovic v. Scilingo* (1972), 7 Ill. App. 3d 918, 289 N.E.2d 79, where the defendant argued that testimony about seat belts demonstrated that the plaintiff's witnesses contradicted each other as to their use, that decision is not consistent with subsequent Illinois decisions limiting testimony regarding nonuse of seat belts to mitigation of damages.

■■ Here, the jury did not hear sufficient seat belt testimony to decide that plaintiff's injuries would have been less severe had he been wearing seat belts. Thus, under the principle announced in *Dudanas* and *Eichorn*, the jury should not have been permitted to hear any testimony about seat

belts, and what they heard should have been stricken. The seat belt evidence was not harmless because the jury may have been influenced by it in answering the special interrogatory regarding contributory negligence. In view of the evolving case law which limits the use of seat belt evidence to the issue of mitigation of damages, the circuit court erred in admitting the seat belt testimony. That testimony deprived the plaintiff of a fair trial, and requires reversal in this case where the evidence was close.

■■ The defendant argues that the questions propounded to plaintiff regarding use of seat belts were proper impeaching inquiries. His contention is that plaintiff's inability to remember whether he was wearing seat belts was obviously untrue, and therefore demonstrated that plaintiff's other testimony was entitled to little weight. If the purpose of asking plaintiff whether he was wearing a seat belt was to impeach his other testimony, the question was improper because it would have discredited plaintiff only with respect to a collateral matter. (*Ward v. Kamberos* (1976), 36 Ill. App. 3d 703, 710, 344 N.E.2d 691; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 286, 293 N.E.2d 483, *aff'd* (1974), 57 Ill. 2d 19, 310 N.E.2d 9.) In view of the lack of competent evidence connecting plaintiff's use or nonuse of seat belts with the extent of the injuries he suffered, use of seat belts was not a material issue in the case and did not prove a fact in controversy. *Marut v. Costello* (1966), 34 Ill. 2d 125, 128, 214 N.E.2d 768.

· Because the other issues raised by this appeal may recur when this case is next tried, they deserve attention here even though the reversal of the circuit court judgment is not based on these matters.

■■ First, it was proper for the police officer who reached the accident scene shortly after the occurrence to testify regarding his observation of the location of the debris on the roadway. (*Dauksch v. Chamness* (1973), 11 Ill. App. 3d 346, 352, 296 N.E.2d 592.) This testimony could be helpful to the jury in determining the point of impact. And, even though the trial judge instructed the jury to disregard the officer's opinion as to the point of impact, it would not have been error had the trial judge in the exercise of his discretion permitted the jury to hear that opinion. Several decisions of Illinois reviewing courts approve of the use of police officers' opinion evidence relating to point of impact. (*Dobkowski v. Lowe's, Inc.* (1974), 20 Ill. App. 3d 275, 314 N.E.2d 623; *Tipsword v. Melrose* (1973), 13 Ill. App. 3d 1009, 1015, 301 N.E.2d 614; *Diefenbach v. Pickett* (1969), 111 Ill. App. 2d 80, 86, 248 N.E.2d 840; *Thomas v. Cagwin* (1963), 43 Ill. App. 2d 336, 193 N.E.2d 233, 235.) We prefer the conclusions reached in these decisions to that in *Dauksch*, which relying on *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12, rejected a State trooper's opinion regarding

point of impact on the ground that his opinion did not supply knowledge of physics or the sciences beyond the ken of the average juror.

The plaintiff contends that in this case opinion testimony of the police officer should have been excluded because of the rule against reconstruction testimony as a substitute for available eyewitness testimony announced in *McGrath v. Rohde* (1972), 53 Ill. 2d 56, 61, 289 N.E.2d 619, *Plank,* and *Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 211 N.E.2d 733. It is first to be noted that the officer's testimony in this case was not a substitute for that of the two eyewitnesses, the plaintiff and the defendant. It was in addition to their testimony. Second, the opinion stated by the police officer as to point of impact based on his observation of the debris is much more limited than was the opinion of the reconstruction experts in *McGrath, Plank* and *Miller.* In those cases, they were requested to state an opinion as to how the accident happened and the movement of the vehicles involved which preceded the accident. In this case, the testimony of the police officer was not offered to reconstruct the accident, but only to show the point of impact based on his observation of the location of the debris. (See Burns, *The Role of Reconstruction Experts in Witnessed Accident Litigation,* 22 De Paul L.J. 7 (1972).) Finally, *Thomas v. Cagwin,* which held that a court in the exercise of its discretion could permit the use of opinion testimony of an officer regarding point of impact even when eyewitnesses were available, was relied upon in the *Miller* decision.

Similarly, the plaintiff was not prejudiced by defendant's persistence in attempting to elicit testimony from Professor Berry regarding the speed of the vehicles. *Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 635, 316 N.E.2d 93, involved an accident where a pedestrian was struck by a vehicle. The court held that testimony of an expert as to how many feet per second a car moves when traveling at certain hourly speeds and what the braking distance of a car would be when traveling at various speeds under the conditions existing at the time of the accident was properly admitted. In its opinion the court observed that, "The trial judge is allowed a wide area of discretion in permitting expert testimony which would aid triers of fact in their understanding of the issues even though they might have a general knowledge of the subject matter." Support for this view is found in *Mueller v. Cities Service Oil Co.* (7th Cir. 1965), 339 F.2d 303, 308; *Carlson v. Hudson* (1974), 19 Ill. App. 3d 576, 578, 312 N.E.2d 19; *Stanley v. Board of Education* (1973), 9 Ill. App. 3d 963, 293 N.E.2d 417; *People v. Everist* (1964), 52 Ill. App. 2d 73, 79-80, 201 N.E.2d 655; Burns, *The Role of Reconstruction Experts in Witnesses Accident Litigation,* 22 De Paul L.J. 7 (1972); 11 Blashfield, Automobile Law & Practice §431.4, at 610 (1968). Although a contrary view is expressed in

*People v. Dietschweiler* (1974), 21 Ill. App. 3d 707, 714-15, 315 N.E.2d 585, even that decision states that admission of such expert testimony is a matter for the discretion of the trial court.

■■ The testimony the defendant attempted to elicit from Professor Berry was presumably based on scientific principles which, from the weight of the two vehicles and the fact that debris was between them, would have enabled the expert to determine the relative velocities of the vehicles at the time of impact. Where the testimony of the two eyewitnesses with respect to speed of the vehicles, a material issue, was as contradictory as in this case, Professor Berry's expert opinion may have assisted the jury, and it would not have been an abuse of discretion to admit his testimony. Defendant's effort to introduce this testimony was not improper.

The judgment in favor of defendant is reversed and this cause is remanded for a new trial.

Reversed and remanded.

JIGANTI, P. J., and McNAMARA, J., concur.