STEPHEN J. NARDI *et al.*, Plaintiffs-Appellants, v. HELEN KAMERMAN *et al.*, as Co-Ex'rs of the Estate of Joseph M. Kamerman, Defendants-Appellees.

First District (5th Division)   No. 1—88—2899

Opinion filed March 30, 1990.

---

Mandel, Lipton & Stevenson, Ltd., of Chicago (Richard L. Mandel, R. Peter Carey, and Uve R. Jerzy, of counsel), for appellants.

Ira Gould and James W. Marks, both of Holleb & Coff, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Narco N/K Construction Company, Ltd., and Stephen J. Nardi appeal from judgment, following a bench trial, in favor of the estate of Joseph M. Kamerman.

We affirm.

Joseph M. Kamerman, Steven J. Nardi, and Gary Shifrin were principals in Narco/Cable Kamerman, Inc., later renamed Narco N/K Construction, Ltd. (Narco), a Delaware corporation, which was formed in 1978. Kamerman and Nardi had previously been partners in a number of real estate development ventures. Narco was formed to provide construction services for Nardi's separate enterprises, known as The Nardi Group. In effect, The Nardi Group operated as a real estate development sales force, generating business for Narco's construction services. Kamerman and Nardi each owned 47% of Narco's stock. Kamerman was Narco's president. Shifrin, who was controller for The Nardi Group, was also Narco's controller and vice-president. Shifrin owned the remaining 6% of Narco stock.

Narco suffered business losses in fiscal years 1978, 1979, and 1980. By March 1982, Narco had a $575,000 cash deficit, primarily due to obligations owed to Narco's subcontractors.

Following a dispute among the principals regarding management of Narco, Kamerman resigned. Shifrin and Nardi remained as Narco's directors. Nardi became president.

Narco and Nardi thereafter sued Kamerman. The allegations made in counts I, II, V, VI, VII, and VIII of plaintiffs' complaint are ultimately at issue in this appeal. In count I, plaintiffs alleged the existence of an oral pre-incorporation subscription agreement among the three shareholders. The agreement purportedly obligated each to make additional capital contributions or loans to Narco in proportion

to their percentage of stock ownership if Narco suffered losses or had debts it was unable to repay. The advances were to be repaid by Narco from profits. Count I alleged Kamerman failed to advance his proportionate share of Narco's cash deficit in breach of that agreement. Count II alleged Kamerman refused to tender his shares in Narco to the remaining shareholders as Kamerman was obligated to do upon termination with Narco under a stock purchase agreement. Counts V, VI, and VII alleged Kamerman breached fiduciary duties by causing Narco to perform personal construction services on Kamerman's residences and to pay Kamerman, or others for Kamerman's benefit, expenses which were not incurred with regard to Narco's business. Count VIII alleged Kamerman further breached fiduciary duties by causing Narco to pay debts Kamerman had, in whole or part, personally guaranteed from sums received by Narco for construction services performed.

Kamerman was deposed on January 13, 1983, and April 11, 1983. However, Kamerman died before the matter reached trial.

At trial, Kamerman's estate moved, *in limine*, to bar Nardi and Shifrin from testifying under operation of the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201). The estate also sought to bar plaintiffs from admitting into evidence four items of correspondence, in the nature of memos, written by Kamerman in February and March 1982, on the ground that the items constituted inadmissible offers of settlement. Rulings on both motions were reserved until trial. Ultimately, the trial judge ruled in favor of the estate on both motions and granted judgment for the estate on all counts.

This appeal followed.

OPINION

Plaintiffs contend the trial judge erred in excluding the four memos from evidence. Specifically, plaintiffs argue the memos contain Kamerman's acknowledgement of obligations to loan Narco money pursuant to the pre-incorporation agreement and to reimburse Narco for personal expenses paid by the company.

Three of the items plaintiffs sought to introduce are dated as written February 11, 1982, March 5, 1982, and March 9, 1982. The fourth, undated memo appears to have been written some time between the memos dated March 5, 1982, and March 9, 1982. Although, presumably, all four items were written to Nardi, only the memos dated March 5, 1982, and March 9, 1982, contain a salutation to him. The other memos contain no salutation. All four items are handwritten in pencil.

We set out below the relevant portions of the memos.

The February 11, 1982, memo, headed "Review of past & future," contains Kamerman's analysis of possible causes for Narco's losses. The memo contains the following closing:

"As I said yesterday I do recognize my obligation and should your opinion be that a change in leadership would be a better solution I would do nothing to prohibit a smooth transition and make every effort to meet my portion of the deficits which I feel greatly responsible, yet not fully responsible for. Should we determine to continue I would like to suggest an open meeting involving you, ***, Gary Shifrin and I [sic] perhaps others to discuss ways to prevent possible reoccurrence of the blood-bath."

The March 5, 1982, memo states, in part:

"Dear Steve:

Pursuant to our discussion of last evening, as well as prior thought, I would hope neither of us will desire to challenge the other by a waste of energy or pettiness. I have endeavored to recognize the position you will be assuming in terms of cash out-lay, etc. [a]s well as your desire to protect your reputation and name. I too covet my reputation and integrity. Recognizing your endeavors to succeed I ask your consideration of my position and 35 years of business endeavor. *** I do not ask your sympathy only your human understanding. I do not wish your financial contribution, nor do I have the wherewithal to give away mine. It is with this spirit and attitude that I have prepared the analysis I am submitting. To the best of my belief it is fairly accurate and fair. I do not consider this a negotiation, rather a reasonable resolution, I would hope you will see it the same way. I took the liberty of rounding odd dollars (both ways) and endeavored to be all inclusive[,] i.e. any liability or debt of mine.

* * *

It is with the business consideration in mind that we must mutually agree to terminate our relationship. All of the introduction has been my totally honest, objective, and emotional expression of feeling."

The memo then contains several financial calculations including what Kamerman was prepared to pay in return for release of "all claims now or future." The memo states:

"I have written this rather than attempting to verbalize it as I believe it will better avoid any personality conflict. I await your comments."

The memo dated March 9, 1982, states, in part:
"Dear Steve:

\* \* \*

As I said I searched long and hard for an answer and in this spirit I have made an evaluation which I believe provides an answer. \*\*\* To avoid this confrontation [over asset valuation] and allow us both to move on to hopefully better things I will make the following offer after a consideration of a $10,000 calculation error by Gary, a reduced evaluation on my venture interests, personal obligations of mine to the company, etc. For the sum of $84,000 paid to me, title to the Lincoln car, full releases from any and all obligations to you or any of the companys [sic], a paid bill for the construction bills paid on my behalf, a paid bill for the $11,038 worth of receivables attributed to me, a paid note for the $100,000 personal loans, my personal files and Cable Kamerman files, as well as any personal possessions not owned by the company, I will release any claim to any assets of the companys [sic], my interests in Narpod Elmhurst, Narco 350, Narco 534, and Narco Gary Ave. I will further sign over my stock in the company's [sic] and any interest in Narco Development, as well as claims to anything jointly owned which I may have forgotten.

\* \* \*

Lastly I would hope this will allow us both to maintain our dignity, pride and friendship. Once again I have chosen to write in the hope of avoiding conflict and bitterness[.]"

The undated memo consists of a comparison of Kamerman's financial calculations with those of Nardi. The memo closes with the following:

"I write this synopsis to once again endeavor a peaceful ending.

\* \* \*

I do not feel I am being unfair or unreasonable and truly desire a peaceful conclusion."

■ Decisions respecting admission of evidence are matters within the trial judge's discretion and may not be reversed absent a clear abuse. (*Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) In Illinois, matters relating to offers of settlement or compromise are ordinarily inadmissible, but admission of other facts elicited incidentally during settlement discussions may be introduced as evidence. *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 494 N.E.2d 541.

■ After carefully reviewing the memos in their entirety, we con-

clude the trial judge did not abuse his discretion in determining that the memos constituted inadmissible offers of settlement. The memos indicate Kamerman's desire to arrive at a compromise such as would minimize hostilities between the parties in conjunction with Kamerman's departure from Narco.

However, notwithstanding that the memos constitute offers of settlement, plaintiffs argue the memos contain statements of independent fact inconsistent with Kamerman's position at trial which the trial judge should have allowed as evidence.

Plaintiffs first cite to language in the February 11, 1982, memo in which Kamerman wrote "I do recognize my obligation" and "[will] make every effort to meet my portion of the deficit which I feel greatly responsible for, yet not fully responsible for." Plaintiffs state any doubt that those statements refer to Kamerman's obligations under the alleged pre-incorporation agreement is dispelled by Kamerman's deposition testimony, portions of which plaintiffs introduced as evidence at trial. Specifically, plaintiffs rely on the following testimony relating to the content of the February 11, 1982, memo:

"Q. [Plaintiffs' Attorney]: You say you recognize an obligation, and I still don't think you have told me what obligation you recognize.

The obligation that you are referring to, is that the obligation to contribute more capital?

A. [Kamerman]: I am assuming from what I am reading is that I was talking about two things.

Q. Okay. And those two things are?

A. I reiterated that before.

Q. What you have said before?

A. Yes.

Q. Later on you say quote, 'Make every effort to meet my portion of the deficits, which I feel greatly responsible for.'

A. 'Which I feel greatly responsible, yet not fully ***.'

Q. Let's start over again. And later on you say, and I quote, 'and make every effort to meet my portion of the deficits which I feel greatly responsible, yet not fully responsible for.' Period, end quote.

A. I will assume that's what I was talking about.

Q. What did you mean by your portion of the deficits?

A. I will presume that I meant my pro rata portion.

Q. 47 percent?

A. I will assume so.

Q. When you talk about your assumptions, you are talking

about your current recollection or your current assumptions of what you meant?

A. Right. It was a rather emotional time."

■ We do not read Kamerman's deposition testimony with the same certainty as plaintiffs. At best, plaintiffs' attorney was able to elicit, from Kamerman, Kamerman's assumptions, as of the time of the deposition, of what Kamerman meant at the time of the writing of the February 11, 1982, memo. Contrary to plaintiffs' arguments, Kamerman's statements as to his then current assumptions fall short of constituting the type of deliberate, detailed, and unequivocal admissions at pretrial depositions which have been held sufficient to bind party-deponents at trial. See *Young v. Pease* (1983), 114 Ill. App. 3d 120, 448 N.E.2d 586.

Moreover, we note that, in response to plaintiffs' attorney's inquiry as to what obligation Kamerman was recognizing in the February 11, 1982, memo, Kamerman stated he had meant "two things." Plaintiffs' attorney then acknowledges that Kamerman's answer is a reiteration of earlier deposition testimony. Plaintiffs, however, did not refer the trial court to the earlier passage in the deposition and did not include, in the record on appeal, the pages of the transcript of Kamerman's deposition testimony preceding the pages from which the above passage is quoted. Thus, we cannot conclude that the portion of deposition testimony relied on by plaintiffs unequivocally establishes that Kamerman admitted the existence of any oral pre-incorporation agreement.

■ Plaintiffs also point out Kamerman used a 47% figure as a multiplier in his calculations in the March 5, 1982, and the undated memos. However, we do not determine, based on that fact, that the trial judge abused his discretion in declining to admit that matter as an admission of Kamerman.

Notations in both memos indicate the calculations are based on analyses other than from Kamerman himself. The calculations in the March 5, 1982, memo are preceded by the notation "Per Shifrin prepared summary thru 2/22/82." The calculations in the undated memo are preceded by Kamerman's notation "Were I to accept your analysis and on review per the corrected figures of Gary Shifrin the following figures would be the facts." The calculations which follow include use of the 47% multiplier. At the bottom of the page containing those calculations, Kamerman noted again "PER YOUR ANALYSIS." The term "your" is underscored twice. Although Kamerman also used the 47% multiplier on a following page in another calculation without indicating the source of the analysis, we believe it would be mere specula-

tion to conclude that that calculation constitutes an admission by Kamerman.

Plaintiffs also direct our attention to other statements contained in the memos which plaintiffs argue are admissions regarding monies owed by Kamerman as alleged in counts V, VI, VII, and VIII.

●5 Regarding the March 5, 1982, memo, plaintiffs state Kamerman acknowledged, in pages five and six, that personal expenditures were to be reimbursed in full. Plaintiffs note that such an admission would be inconsistent with Kamerman's assertion in his deposition testimony, and his estate's theory at trial, that personal expenditures were perquisites enjoyed by all three principals of Narco.

Page five of the March 5, 1982, memo begins: "In addition to the N/K sums, Kamerman is informed of the following interrelated debt." Included in calculations written thereafter are the notations for amounts owed, one of which was to "Nardi & Co." for an airline ticket. Page six contains Kamerman's offer of exchange in return for the release of the claims noted on the previous pages, but does not contain further notation of any expenditures.

We do not believe the statements on either page can be conclusively construed as admissions. Kamerman only indicated that he was informed of the debts noted and included those items in his offer of settlement. Kamerman's statement that he was informed of the debts may be as easily read as an acknowledgement only that the amounts were claimed against him as it may be read to constitute an outright admission that he owed the amounts.

Plaintiffs contend the undated memo contains similar admissions. Plaintiffs cite the statement, next to an estimated amount used in calculations, "Kamerman receivables he accepts responsibility." Plaintiffs also cite Kamerman's notation "I contend if I am to reimburse for $20,000+ work done at residences you owe $8,000 work done at residences."

The reference to responsibility for receivables is included in the calculations which, we have noted above, were prepared by Shifrin, not Kamerman, and cannot be reasonably construed as Kamerman's admissions. Nor are we persuaded that the notation concerning reimbursement for work done on Kamerman's residences constitutes admissions. That statement indicates Kamerman disputed that reimbursement was required for work done at his residence. The statement is also consistent with Kamerman's position that such expenditures were perquisites. The statement indicates that the recipient of the memo, presumably Nardi, would also be indebted for similar expenditures if Kamerman had to reimburse the company.

Last, plaintiffs allude to a paragraph in the March 9, 1982, memo as containing an acknowledgement that construction bills had been paid on Kamerman's behalf and that he was responsible for receivables attributed to him. That paragraph refers, in conjunction with an offer of settlement, to a "paid bill for the construction bills paid on my behalf" and a "paid bill for the $11,038 worth of receivables attributed to me." We note that those statements do not pertain to new matters but to the same two matters noted by plaintiffs in the undated memo. And, as we have concluded Kamerman's statements as to those two matters do not constitute conclusive admissions, we are not persuaded that reference to those matters, without more, in the March 9, 1982, memo could constitute admissions.

Thus, even if we accepted the argument that the statements plaintiffs noted might have been properly admitted into evidence although contained in offers of settlement, because we do not find the statements can be characterized as admissions of fact, we find no basis to conclude the trial judge abused his discretion in refusing to admit the statements.

■ Plaintiffs contend Shifrin's testimony should not have been precluded by the Dead Man's Act. Under the Dead Man's Act, persons "directly interested" in an action are rendered incompetent to testify as to conversations with the deceased or to events which took place in deceased's presence. (Ill. Rev. Stat. 1985, ch. 110, par. 8—201.) Plaintiffs argue that, although he was a 6% shareholder of Narco, Shifrin was not directly interested in the outcome of the trial because he would not receive any immediate pecuniary gain from a victory against Kamerman's estate. Plaintiffs state Shifrin's testimony at trial regarding his competency to testify established that Nardi advanced Kamerman's share, as well as Nardi's own, to Narco. Thus, any recovery against Kamerman's estate would be used by Nardi to recoup his own personal expenditure. Further, plaintiffs argue, payment of Kamerman's purported share of the deficit by his estate would not increase the value of the corporation's stock because the payment was to be considered a loan to be repaid by the corporation from profits.

■ The supreme court has indicated, generally, that where a corporation will gain or lose as a result of a suit, corporate shareholders are incompetent to testify against the representative of a deceased person simply because shareholders are owners of the income and earnings of the corporation. (See *Scott v. O'Connor-Couch* (1915), 271 Ill. 395, 111 N.E. 272.) We do not find the facts in the instant case warrant departure from that general consideration.

■ Contrary to plaintiffs' position, Narco would benefit by a recovery from Kamerman's estate. Narco's financial status would be directly enhanced because recovery from Kamerman's estate would permit Narco to retire the debt incurred for the contribution. That is true regardless of whether or not Nardi contributed Kamerman's share. Further, Narco would not be deprived of that benefit even if the contribution was, in fact, to be repaid from Narco's profits. To the extent use of those funds for that purpose would be to the exclusion of the use of those funds for other corporate opportunities, Narco would benefit. Because Shifrin owned 6% of Narco's stock and because that interest is dependent upon the financial stability or profitability of Narco, we conclude the trial judge properly barred his testimony under the Dead Man's Act.

Plaintiffs contend Kamerman's estate waived operation of the Dead Man's Act disqualification of Shifrin by having Shifrin testify as an adverse witness as to the following matters: whether Shifrin could identify several corporate documents; whether demands, either oral or in writing, were made upon Kamerman for payment of his portion of deficit; the circumstances surrounding Kamerman's resignation from Narco; and whether Kamerman had promised to repay personal expenditures.

■ After examining the record of Shifrin's testimony, we do not find the estate waived application of the Dead Man's Act. First, as to the estate's counsel's questioning of Shifrin, the record reflects an understanding between the parties and the trial judge that Shifrin was testifying both as an adverse witness and for purposes of cross-examination. Specifically, the record reflects that Shifrin was testifying in an adverse capacity for purposes of laying foundation to admit as evidence the corporate documents alluded to above in the presentation of the estate's case.

As to the estate's questioning regarding those documents, after having Shifrin identify them, counsel for the estate asked Shifrin if those documents contained evidence, in writing, of a pre-incorporation agreement. That questioning cannot be construed as waiving application of the Dead Man's Act to prohibit Shifrin's testimony as to conversations or events surrounding the alleged oral pre-incorporation agreement.

Further, after reviewing the questions put to Shifrin by counsel for the estate, in light of the scope of Shifrin's direct testimony, we conclude the matters asserted by plaintiffs fall within proper impeachment of Shifrin and do not constitute waiver of application of the Dead Man's Act. See *Buczyna v. Cuomo & Son Cartage Co.* (1986),

146 Ill. App. 3d 404, 496 N.E.2d 1116.

Finally, plaintiffs assert the trial judge's ruling was against the manifest weight of the evidence. However, because Shifrin was plaintiffs' only witness and because we conclude the trial judge properly determined Shifrin was incompetent to testify under the Dead Man's Act, we find no basis for plaintiffs' contention.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

MURRAY and GORDON, JJ., concur.