HUGO THURMOND *et al.*, Plaintiffs-Appellees, v. AMBROSE MONROE, Indiv. and as Agent of Schwerman Trucking Company, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—90—2602

Opinion filed September 14, 1992.

Sweeney & Riman, Ltd., of Chicago (Mary Jo Connelly, Georgene M. Wilson, and Kenneth J. Barrish, of counsel), for appellants.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker, Joel M. Horwich, and David C. Thomas, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:

This case involves a negligence action for personal injuries sustained in a vehicular collision on September 19, 1981, between a Chevy Blazer driven by plaintiff Hugo Thurmond (Hugo) and a tanker-truck driven by defendant Ambrose Monroe (Monroe) on behalf of his employer Schwerman Trucking Co. (employer). Plaintiffs alleged in the amended complaint that defendant Monroe, while operating his vehicle in an easterly direction, crossed over the dividing line separating westbound and eastbound lanes of traffic on Route 64 by Chana Road in Oregon, Illinois, and entered into Hugo's lane. Monroe thereby caused his own vehicle to come into contact with Hugo's vehicle and collide with great force. Defendants denied the substantive allegations of the complaint and filed a counterclaim against plaintiff Hugo for property damage to the employer's truck. Hugo settled the counterclaim prior to trial.

Before the trial, which commenced on March 13, 1990, defendants brought a motion for partial summary judgment arguing that the findings in a prior traffic court proceeding, in which Hugo was found

guilty of a minor traffic infraction, collaterally estopped Hugo from proceeding in the instant action upon the theory that it was defendant Monroe who crossed the center line. Following a full hearing, the trial court denied defendants' summary judgment motion and granted plaintiff Hugo's motion *in limine* to bar any testimony regarding the traffic court proceeding or the issuance of the traffic citation to plaintiff Hugo for improper lane usuage. The trial court also granted plaintiffs' motion *in limine* to exclude the testimony of the investigating police officer regarding the point of impact.

The trial then proceeded with witness testimony as follows. Plaintiff Hugo testified that he planned to go hunting in Savanna, Illinois, on September 19, 1981, and that before he went to bed the preceding night, at 9:30 p.m., he drank a couple of beers. He arose at 1:30 a.m. At about 5 a.m. as plaintiff drove his Chevy Blazer proceeding westbound on Route 64 at the Chana Road intersection, he saw the headlights of an 18-wheeler tractor-trailer truck approaching him from the eastbound lane of Route 64. He testified that as the truck got closer, he saw the headlights cross into his lane, but did not have time to avoid a collision. Because he placed his hands over his face and eyes, he did not see what happened next. Upon impact, Hugo was rendered unconscious until he awoke in the hospital. He was treated for emergency care and then transferred to another hospital where he remained for approximately two weeks. He was forced to stay home from work for four months due to the extent of the seriousness of his injuries.

Plaintiff Barbara Thurmond, wife of Hugo, testified about the condition of the Chevy Blazer when she saw it in the garage where it had been taken after the accident. However, she acknowledged that she neither went to the scene of the accident nor observed the condition of the Blazer prior to its removal from the scene. She also testified in detail regarding the extent and effect of her husband's injuries on their home life after he was released from the hospital.

Next, the jury heard detailed evidence deposition from two examining physicians, Dr. Srivastava and Dr. Bartucci, regarding the nature and permanency of the injuries suffered by Hugo. Dr. Srivastrava was the neurologist who treated him immediately after the accident. The doctor testified that Hugo's blood-alcohol level was .10, which is in the toxic range and, in his opinion, impairs a person's judgment. He also performed a physical examination and diagnosed Hugo's injuries. Six years had elapsed from the original date of the injury until the time Dr. Srivastava saw Hugo again, and, in his opinion, Hugo had made an excellent recovery.

Defendant Monroe testified that he was travelling eastbound on Route 64 in his truck when Hugo's car crossed the center line into his lane thereby causing the accident. Finally, the investigating officer, Denis Rauch, testified as a post-occurrence witness. He stated that at the time of the accident he had been working for the sheriff's department for over a year. He received training at the academy which included basic instruction on the investigation of accidents and had investigated 15 to 20 accidents prior to the present incident. He arrived at the scene of the accident at 4:54 a.m. and observed two vehicles; Hugo's Blazer was in the westbound lane of the road and the employer's tanker truck was lying in a ditch on the south side of the road.

Rauch stated that during the time he investigated this accident, which took a total of eight or nine hours, he looked for skid marks in relation to the center line, damage and gouge marks on the roadway and the location of debris and the placement of vehicles. He then recorded those observations on the police report and took photographs. He stated that he did not observe any skid marks or damage to the highway in the westbound lane. He took a statement from defendant Monroe and issued a citation to Hugo for improper lane usage.[1] However, on cross-examination, Rauch admitted that he forgot to put certain observations in the written report such as the location of the skid marks and certain gouge marks. He also conceded that he improperly identified a utility pole in the diagram which he drew at the scene of the accident. Neither could he recall the incident without referring to the report.

The trial court entered judgment on the jury's verdict in favor of Hugo Thurmond and against defendants in the amount of $319,642, reduced by 16.5% for plaintiff Hugo's comparative negligence to $266,901. The jury also returned a verdict of $5,000 in favor of Barbara Thurmond.

■ Defendants first contend that the trial court erred by denying their motion for partial summary judgment. They assert that their motion was based on the doctrine of collateral estoppel, as it is clear there had been a determination of who crossed the center line by a court of competent jurisdiction in a prior cause of action. (See *Blair*

---

[1]As a result of this traffic citation, there was a traffic court proceeding at which Thurmond pleaded not guilty. Officer Rauch was called as a witness and Thurmond and Monroe also testified. After consideration of the testimony, exhibits, and argument of counsel, Thurmond was found guilty of crossing the center line and fined $25. Allegedly, following the traffic court trial, Thurmond admitted to Officer Rauch that he had crossed the center line.

*v. Bartelemay* (1986), 151 Ill. App. 3d 17, 502 N.E.2d 859.) Under Illinois law, the denial of a motion for summary judgment is not reviewable on appeal. (*Tripi v. Landon* (1986), 140 Ill. App. 3d 230, 488 N.E.2d 610.) It is well settled that a prior order denying a motion for summary judgment is not reviewable following an evidentiary trial, because the result of any error in such denial is merged by law in the subsequent trial. (See *Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 187 N.E.2d 274; *Peters v. United Van Lines, Inc.* (1980), 82 Ill. App. 3d 104, 402 N.E.2d 378; *Paulson v. Suson* (1981), 97 Ill. App. 3d 326, 423 N.E.2d 243; *Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 474 N.E.2d 644.) Thus, even where the evidence indicates that the motion for summary judgment should have been granted the error cannot be reviewed. (*Home Indemnity Co.*, 38 Ill. App. 2d 358, 187 N.E.2d 274.) Accordingly, we need not review the trial court's order denying partial summary judgment. Moreover, although defendants' motion for summary judgment was based upon a collateral estoppel argument to preclude an allegedly new determination by the trial court of who crossed the center line, this question was the material issue of fact in dispute to be decided by the jury as the trier of fact.

Defendants next contend that the trial court erred in granting plaintiffs' motion *in limine* which precluded evidence of Hugo's conviction in a prior traffic court proceeding. We disagree. Hugo was convicted following a plea of not guilty under the provisions of the Illinois Vehicle Code for driving off the roadway. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—709(a).) The conviction stemmed from the same occurrence that serves as the basis of the instant lawsuit. Defendants maintain that the trial court's exclusion of evidence as to who crossed the center line and about Hugo Thurmond's conviction were relevant factors that affected Hugo's credibility and was also *prima facie* evidence of his negligence. To support this theory, they rely upon *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 235, and *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160, wherein the Illinois courts sanctioned the admission of a previous conviction in a criminal matter in a subsequent civil proceeding.

In *Smith*, the court found for the first time in Illinois that under certain circumstances, proof of a criminal conviction may be admitted into evidence at a subsequent civil trial to prove the facts upon which the conviction was based. In *Smith*, the defendant's prior criminal convictions for robbery and forcible rape were admitted as evidence against him in a subsequent civil proceeding brought to terminate his parental rights. Defendant argued that proof of the prior criminal

convictions violated the hearsay rule and was inadmissible to prove that he actually committed the crimes of which he was convicted. The appellate court disagreed and held that the defendant's previous conviction of rape, a felony, was admissible in a later civil case as *prima facie* evidence that the defendant had in fact committed a rape. In reaching its decision, the court commented upon the distinction between allowing a defendant's plea of guilty into evidence under the judicial admission exception to the hearsay rule and allowing a defendant's actual conviction following a plea of not guilty to be used as evidence of the facts supporting the conviction.

Fifteen years later, the Illinois Supreme Court remarked that the *Smith* court did not limit its holding to the admissibility of convictions of felonies only, although a number of courts limited the admissibility of prior convictions in civil cases to convictions of serious offenses, on the ground that convictions of misdemeanors do not represent sufficiently reliable determinations. (*Thornton v. Paul*, 74 Ill. 2d at 149-50.) In *Thornton*, defendant was charged with a felony but was convicted of a serious misdemeanor. Because he was represented at all times during the criminal proceedings by counsel, the court there concluded that the likelihood of an unjust conviction had been minimized and that the defendant's conviction was reliable evidence of the fact that he did commit a battery. Thus, the court found that evidence of defendant's conviction of battery should have been admitted in the later garnishment proceeding as *prima facie* evidence that his striking of the plaintiff constituted a battery.

As a result of the *Smith* and *Thornton* decisions, the Fourth District of the Appellate Court in 1981, without further elaboration, concluded that plaintiff was entitled to present proof of defendant's conviction of driving too fast for conditions for the jury's consideration in the wrongful death action therein. In *O'Dell v. Dowd* (1981), 102 Ill. App. 3d 189, 192, 429 N.E.2d 548, the court found that proof of a traffic conviction is admissible in a civil case as *prima facie* evidence but may also be explained and contradicted by defendant.

However, a few years later, also in reliance on the *Smith* and *Thornton* rationales, the First District of the Appellate Court rendered an opinion completely opposite to the *O'Dell* decision. In the case of *Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 469 N.E.2d 708, we commented that "[t]he courts of Illinois have not yet decided whether minor criminal matters such as traffic offenses should be included in the hearsay exception carved out by *Smith* and *Thornton*. [Citation.] In *dicta*, however, the court in *Smith* stated:

' "[W]e would not want our decision in this case to be interpreted as a holding that every conviction following a plea of not guilty is admissible in evidence in a later case involving the facts upon which the conviction is based. *** For example, our holding in this case would not be authority for the admissibility of a traffic court conviction in a later civil case arising out of a traffic accident. Defendants in traffic cases are frequently unrepresented by counsel, and the proceedings are relatively informal. In view of the comparatively modest penalty a defendant faces on a judgment of conviction, the charge is rarely contested with the vigor that characterizes the adversary system at its best." ' " (*Hengels*, 127 Ill. App. 3d at 907-08, quoting *Smith*, 54 Ill. App. 2d at 62.)

The court there also considered an annotation on the subject found in the American Law Reports which offered as an additional rationale the perfunctory nature of minor traffic violation proceedings. Finally, the *Hengels* court, in considering the decisions handed down by other State courts, wherein it encountered a similar rationale for the exclusion of traffic court convictions, found the case law and the authorities to be persuasive.

Thus, in finding the *Smith* reasoning to be sound, *Hengels* held that the trial court therein did not commit error when it excluded the defendant's prior traffic court conviction from evidence. *Hengels* reiterated that the first case in Illinois which allowed criminal convictions to be admissible in later civil actions limited its ruling so as to specifically exclude the admission of traffic court convictions. The court in *Hengels* stated:

"A traffic court conviction will often result from expediency, convenience and compromise; the constitutional safeguards are often perfunctory and the defendant's opportunity and motive to defend vigorously are often lacking. We do not believe that such a traffic court conviction possesses the adequate assurance of reliability necessary to justify its admission into evidence at a later civil trial based upon the same facts. To hold otherwise, we believe, could conceivably turn a mechanical and summary traffic court hearing into the cornerstone of a significant civil action filed after the conclusion of the criminal proceedings." *Hengels*, 127 Ill. App. 3d at 910.

In the present case, we find that the trial court properly granted plaintiffs' motion *in limine* to exclude evidence of Hugo's prior traffic citation and conviction. First, we believe that the instant factual matrix is distinguishable from the cases cited to by defend-

ants. Plaintiff's conviction here for the traffic citation did not involve a serious crime. (*Cf. Smith*, 54 Ill. App. 2d 51, 203 N.E.2d 160.) The conviction, to the contrary, was of a nonserious nature, involved a minor charge and a modest penalty. The *Thornton* defendant, on the other hand, was convicted for a serious offense.

*O'Dell* (102 Ill. App. 3d 189, 429 N.E.2d 548) is distinguishable because defendant there was convicted *after pleading guilty* to the charge against her. It has been held that a plea of guilty is admissible as an admission against interest by the party charged. (*Hartigan v. Robertson* (1980), 87 Ill. App. 3d 732, 409 N.E.2d 366.) We find no such admission by plaintiff here. (*Cf. Wright v. Stokes* (1988), 167 Ill. App. 3d 887, 891, 522 N.E.2d 308 (where the fifth district reversed the trial court's decision and held that plaintiff should have been allowed to introduce evidence of defendant's plea of guilty).) In the *O'Dell* case, the appellate court relied upon the established evidentiary rule which treats a guilty plea as an admission by defendant of the facts upon which the conviction is based as long as those facts are relevant to some issue involved in the civil proceeding.

Neither is the *Wine v. Bauerfreund* (1987), 155 Ill. App. 3d 19, 507 N.E.2d 155, case dispositive here. In *Wine*, the first district again agreed with both the *Smith* reasoning and *Hengels* holding. We noted the general rule against admitting evidence of traffic convictions in civil cases, but upheld the trial court's finding that "in order to eliminate any confusion in the jurors' minds and to avoid inappropriate and time-consuming speculation by them during deliberations, it would inform them that [defendant] had been found guilty of negligent driving." (155 Ill. App. 3d at 28.) However, *Wine* concluded that the trial court's decision to advise the jury of the conviction needed to be considered in the context of the events preceding it.

In that case, while attempting to impeach the officer's testimony, plaintiffs' counsel questioned the officer about issuing a traffic citation to defendant, about appearing in court to testify against the defendant, and about his knowledge as to whether or not defendant was found guilty on that citation. On redirect examination, defense counsel inquired whether it was true that defendant was found not guilty and later elicited more testimony from the officer as to his opinion that had the vehicle not been illegally parked, the accident might not have occurred. Thus, the trial court allowed into evidence a copy of defendant's conviction to counter the contrary inference raised by defense counsel's question. The *Wine* case, we believe is markedly different from *Hengels*, and the admission of the conviction therein was further safeguarded where the trial court instructed the

jury that the conviction was of no relevance and should not be considered in reaching a decision in the case.

When we look at the careful and considered analysis of *Hengels* (127 Ill. App. 3d 894, 469 N.E.2d 708), we agree with that court's conclusion and its interpretation of *Smith* as "specifically limit[ing] its ruling to exclude the admission of traffic court convictions." (*Hengels*, 127 Ill. App. 3d at 910.) While there is some indication here that witnesses testified and counsel presented arguments in the prior traffic court proceeding, we are inclined to rely on *Hengels'* rationale that to allow the admission of a traffic conviction into a later civil action, "could conceivably turn a mechanical and summary traffic court hearing into the cornerstone of a significant civil action filed after the conclusion of the criminal proceedings." *Hengels*, 127 Ill. App. 3d at 910.

Defendants next assert that the trial court abused its discretion by: (1) finding the investigating police officer was not qualified to render an expert opinion on the point of impact of the collision and (2) excluding his testimony as improper reconstruction testimony. They contend that the testimony of an investigating police officer regarding the disputed point of impact in a collision is admissible as an aid to the jury, even when there has been eyewitness testimony. *Kassela v. Stonitsch* (1978), 57 Ill. App. 3d 817, 373 N.E.2d 608.

■ An expert is one who, because of his education, training or experience, possesses knowledge and skill of a specialized nature which is beyond the knowledge of the average person. (See *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 541 N.E.2d 643.) The trial court below determined that Officer Rauch did not qualify as an expert (see *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037). While some decisions of Illinois reviewing courts approve the use of police officers' opinion evidence relating to point of impact (see *Kassela*, 57 Ill. App. 3d at 822 (and the cases cited therein)), they have done so where the proffered expert was deemed qualified to testify. Different from *Kassela*, where therein the officer had 3½ years' experience and had investigated 100 accidents, at the time of the accident here, Rauch had been with the department only one year and had only investigated 15 accident cases. Furthermore, the training he received in traffic investigation was strictly limited to the general tasks of taking measurements and collecting evidence at the scene of the accident.

Accordingly, we conclude there was no abuse of discretion by the trial court in refusing to qualify Officer Rauch as an expert witness based upon his limited experience and training. (*In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 491 N.E.2d 894.) The proponent of

the testimony bears the burden of establishing the qualifications of a person to testify as an expert witness on a particular subject, and that determination is a matter generally reserved to the sound discretion of the trial judge. (*Schaffner*, 129 Ill. 2d at 36.) Moreover, unlike the situation in *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 547 N.E.2d 1345, the proffered expert here, Rauch, lacked sufficient qualifications to testify as an expert witness.

■ The trial court also found that Rauch's testimony was reconstruction expert testimony which is generally not permitted where there exists physical and eyewitness evidence for the jury to draw its own conclusions. (See *Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 518 N.E.2d 205.) Although like *Kassela*, the testimony of Rauch here primarily "was not offered to reconstruct the accident, but only to show the point of impact based on his observation of the location of the debris" (*Kassela*, 57 Ill. App. 3d at 823), the record shows that Rauch was allowed to testify fully about location of debris, placement of vehicles and other conditions of the road. While Rauch's accident investigatory skills were found to be limited, the record demonstrates that the jury was allowed to get a full and precise description of exactly what he saw upon arriving at the scene and in conducting his investigation.

Our holding today is not meant to change the law with respect to the issue of the admissibility of reconstruction evidence. (See *Augenstein*, 191 Ill. App. 3d 664, 547 N.E.2d 1345.) We are mindful that most trial courts' reluctance to accept the testimony of police officers as reconstruction experts is based at least in part on the witnesses' inability to provide expertise in a truly scientific field. (*Deaver v. Hickox* (1967), 81 Ill. App. 2d 79, 87, 224 N.E.2d 468.) We believe such to be the case here where the record does not reflect that Officer Rauch had such superior and truly scientific training, knowledge, and experience to qualify as an expert in the field of accident investigation and determination of point of impact. As previously pointed out, there was even some question as to the accuracy of information contained in his report and the actual location of certain markings and poles at the scene. Accordingly, we find no error on the part of the trial court.

■ Finally, defendants contend that the jury verdict is against the manifest weight of the evidence due to several erroneous rulings by the trial court. Defendants urge error in: (1) the admission into evidence of photographs of plaintiff's vehicle based upon the testimony of his wife, although a proper foundation was not laid; (2) the preclusion of Officer Rauch's proffered testimony about an admission pur-

portedly made by plaintiff Hugo at the time of the traffic court proceeding; and (3) the admission of the highly prejudicial and inflammatory testimony of Dr. Bartucci regarding the permanency of plaintiff's injuries.

A verdict is considered to be against the manifest weight of the evidence only when the jury's verdict is palpably erroneous or appears to be unreasonable, arbitrary and not based on the evidence. (*Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 451 N.E.2d 1307.) Here, we believe counsel for plaintiffs clearly laid the proper foundation when plaintiff Barbara testified that the photograph was an accurate representation of the Blazer when she saw it after the accident. (See *Gaunt & Haynes, Inc. v. Moritz Corp.* (1985), 138 Ill. App. 3d 356, 485 N.E.2d 1123.) We also find that the trial court properly excluded any evidence of Hugo's purported admission to Rauch where Rauch testified as to what he "basically" said to him, which is no more than unreliable testimony (see *Nardi v. Kamerman* (1990), 196 Ill. App. 3d 591, 554 N.E.2d 397), and cannot be said to constitute an admission against interest.

■■ As to the purported error regarding Dr. Bartucci's testimony, it is well settled that only a physician may testify as to the permanent nature of an injury (*Gray v. Hallett* (1988), 170 Ill. App. 3d 660, 525 N.E.2d 89), and no Illinois court has barred such testimony because the examination of the patient took place several years before the trial. *Hendricks v. Nyberg* (1976), 41 Ill. App. 3d 25, relied upon by defendants, is not instructive here because therein the court held that a physician's testimony at trial must be based on a recent examination, when that testimony concerns the prognosis of a patient. In the instant case, the testimony of Dr. Bartucci was given to detail the nature and extent of plaintiff's injuries.

Based on the foregoing, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.